# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc., | Case No. 25-01926 |
| Debtor | Judge Randal S. Mashburn |

**PLEASE TAKE NOTICE that pursuant to Bankruptcy Rule 2002(a)(2) and Local Rule 9013-1:**
**The deadline to file a response or objection to the Application is July 1, 2025. A hearing on this Objection is Schedule for July 8, 2025, AT 9:30 A.M. CT in Courtroom 1, 701 Broadway, Nashville, TN 37203, with Virtual Participation Permitted If Authorized by the Court.**

## OBJECTION OF LINDA SIMMONS TO DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER APPROVING THE EMPLOYMENT AND RETENTION OF HOLLAND & KNIGHT LLP AS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION RETROACTIVE TO THE PETITION DATE

Linda (Lindstrom) Simmons, Pro Se Creditor and Co-Owner of real property subject to this proceeding, hereby files this Objection to Debtor's Application

### 1. INTRODUCTION AND PROCEDURAL POSTURE

1. On May 6, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 9, 2025, the Debtor filed the *Debtor's Application for Entry of An Order Approving the Employment and Retention of Holland & Knight LLP (**"H&K"**) as Counsel for the Debtor and Debtor in Possession Retroactive to the Petition Date* [Doc. 36] ("the **Application**"), seeking approval under 11 U.S.C. § 327(a). The undersigned, Linda Simmons, is a co-owner of real property subject to this proceeding and files this Objection in response.

2. This Objection is based on concerns regarding disinterestedness, lack of board authorization, potential conflicts of interest, and the failure to disclose critical financial and

1

contractual relationships between the Debtor and HPP Property Services, LLC, doing business as Lemonjuice Solutions (**"*Lemonjuice*"**), which appears to exercise substantial control over the Debtor's operations.

## II. Lack of Disinterestedness Under 11 U.S.C. § 327(a)

3. A core requirement for approval of bankruptcy counsel is that the professional be a "disinterested person" who does not hold or represent any interest adverse to the estate.

4. According to the Roth Declaration, the Debtor first retained H&K by engagement letter on June 11, 2024 – nearly eleven months before the Chapter 11 petition was filed on May 6, 2025 – and executed a supplemental engagement letter in February 2025. During this extended prepetition period, the Debtor made at least nine separate payments totaling over $50,000. Yet the Application provides no invoices, time records, or description of the services performed. It simply states that H&K worked closely with the Debtor's management and became familiar with its operations.

5. The length and cost of the prepetition engagement raise serious concerns as to whether H&K was, in fact, advising on matters that should have triggered an earlier bankruptcy filing, or should have been disclosed to members, creditors, or the Court.

6. The proposed counsel, Blake Roth, and his firm were not simply retained post-petition to advise on neutral legal matters. Available facts suggest that they played a key role in planning the filing, including advising on timing and legal structure, proceeding without documented authority from Hiawatha Manor Association West (**"*Hiawatha West*"**), and coordinating with Lemonjuice, whose own contracts and financial role remain undisclosed. These circumstances raise serious concerns about whether counsel can now independently represent the interests of the estate.

7. This lack of transparency is especially concerning in light of (i) Lemonjuice's assertion of a secured claim, (ii) the omission of its management agreement from Schedule G, and (iii) publicly available information indicating that Lemonjuice played a comparable role in a prior timeshare liquidation (*Pinecrest*), where H&K also served as counsel. These parallels raise significant questions about H&K's independence and the extent of its prepetition alignment with insider interests.

8. In each of the two documented bankruptcies to date, Lemonjuice served as the management firm, asserted a stake in the estate, and retained the same legal counsel to direct the process. These connections – which were not disclosed in the present Application – suggest a repeated alignment between Lemonjuice and H&K that warrants heightened scrutiny. As discussed further in Section VI, H&K's failure to identify Lemonjuice's role in the *Pinecrest* case – despite citing the representation – undermines the transparency required by Bankruptcy Rule 2014.

9. Before the Court can assess disinterestedness under § 327(a), it must first determine whether H&K was properly retained under the Association's own governance structure – a threshold issue that bears directly on the validity of the Application.

10. At a minimum, the surrounding circumstances call into question both the neutrality of proposed counsel and the good faith of the retention process. These concerns warrant full disclosure of all prepetition invoices and engagement details, and justify close judicial scrutiny before any employment is authorized.

### III. Lemonjuice's Financial Role and Structural Control Over the Debtor

11. It is unclear who directed the work, what tasks were performed, and whether it served the interests of the Debtor or, rather, those of third-party actors such as Lemonjuice.

3

12. Even more concerning is the ambiguity surrounding who actually paid for H&K's services. Were the fees paid directly by Lemonjuice? Or were they paid by the Association using funds loaned to it by Lemonjuice?

13. In the August 1, 2024 Board meeting (timestamp 19:12), Lemonjuice representative Jeff Ingram stated, "Just so that all the owners and the board realize, if there is a bankruptcy, that is at Lemonjuice's expense. So it's not one that will be passed on to the owners. But it is expense that we are responsible for." If true, this admission raises serious concerns as to whether Lemonjuice – not the Debtor – functionally controlled the retention of counsel and the direction of the prepetition legal strategy.

14. Lemonjuice has publicly stated that it is funding this bankruptcy case. As a result, its influence over the Debtor's operations, staffing and professional appointments is not speculative – it is structural. Can counsel be deemed disinterested when the party funding the engagement also exerts control over the board and stands to benefit from continued control of the process? That question lies at the core of § 327(a).

15. Where the same entity acts as financial underwriter, management authority, and de facto decisionmaker on key estate matters, the importance of transparent disclosures and formal board approvals becomes all the more acute. The Court's scrutiny of professional retention is one of the few remaining checks on that concentration of power – and where insider control over both strategy and payment is alleged, that retention must be rigorously scrutinized.

### IV. The Need for Heightened Scrutiny Where Insider Control Exists

16. In the absence of any documented board resolution authorizing the retention of counsel, and given Lemonjuice's extensive control over the Debtor's finances and operations during the relevant period, it appears that the engagement of H&K was entered into by a party

lacking proper authority. This raises serious concerns under § 327(a) regarding both the legitimacy of the retention and the independence of proposed counsel.

17. It remains unclear who authorized H&K's retention on behalf of the Debtor. During the relevant prepetition period, Lemonjuice, exercised substantial control over the Debtor's financial operations and strategic decisions and likely directed H&K's engagement. However, the agreement under which Lemonjuice purports to act — its Management and Repositioning Agreement — was not disclosed in Schedule G, nor has the Debtor moved to assume it under 11 U.S.C. § 365. Any authority derived from an undisclosed, unassumed agreement lacks legal effect.

18. Any retention of counsel or delegation of corporate powers traceable to an unassumed, undisclosed agreement is legally voidable. The continued concealment of Lemonjuice's contractual role further undermines the required showing that proposed counsel is a disinterested person as required under § 327(a).

19. Moreover, the original Declaration prohibits the management firm from fronting operating funds on behalf of the Association. (*See Exhibit A, page 3 of Declaration Exhibit V, (S)8 and 9 and Exhibit B, page 3 of Declaration Exhibit 5, (S)8 and 9*) [1] The Management Agreement — recorded as Exhibit V to the Declaration of Hiawatha Manor I and as Exhibit 5 to the Declaration of Hiawatha Manor — remains the only recorded and operative management contract. It has never been amended, replaced or terminated. Although multiple amendments to the Declarations have been recorded since their execution in 1979 and 1980, none purport to modify or supersede the Management Agreement. Under Tennessee law and the Declarations'

---

[1] The Declaration of Horizontal Property Regime Master Deed for Hiawatha Manor I, Lake Tansi Village is recorded at Book 231, Page 215 of the Cumberland County Register of Deeds. The Declaration of Horizontal Property Regime for Hiawatha Manor, Lake Tansi Village is recorded at Book 216, Page 209. Both include substantively identical Management Agreements attached as Exhibit V and Exhibit 5, respectively.

5

own terms, any such amendment would require formal approval by co-owners and recordation to be valid.[2]

20. Accordingly, the recorded Management Agreement remains in effect and continues to govern the management firm's authority. If Lemonjuice's claimed authority is based on its financial contributions, that position is incompatible with the terms of the only management contract ever incorporated into the governing documents. If Lemonjuice is not bound by those terms, it cannot simultaneously claim successor authority under them.

21. Approval of this employment motion — without resolving whether the management firm has authority to act — risks retroactively validating a contract or governance structure that has never been vetted under the Declaration's amendment requirements. Governance authority is not presumed; it must be demonstrated.

### V. Lack of Board Authorization to Retain Counsel

22. The burden rests with the Debtor to affirmatively demonstrate that proposed counsel is a disinterested person and does not hold or represent any interest adverse to the estate. This burden cannot be met without disclosing the terms of the engagement, identifying who authorized it, and showing that it was properly approved under applicable corporate governance procedures.

23. In addition to the management firm's lack of contractual authority, there is no evidence that the Board of Directors of Hiawatha Manor East ("*Hiawatha East*") formally approved the retention of H&K or authorized Lemonjuice to do so on its behalf. The Debtor has

---

[2] The Declarations state that they may be amended only "by an instrument in writing signed by not less than seventy-five percent (75%) of such co-owners and duly recorded." No such amendment has been recorded. See also Tenn. Code Ann. § 66-5-106 (unrecorded instruments are ineffective against third parties without notice.)

6

Case 2:25-bk-01916   Doc 51   Filed 06/30/25   Entered 06/30/25 13:06:13   Desc Main
Document      Page 6 of 18

submitted no board resolution, meeting minutes, or written consent showing that such action was ever taken.

24. While the Application states that the Debtor executed an engagement letter with H&K on June 11, 2024, no copy of that agreement has been provided to the Court. The Application does not identify who signed the engagement letter, whether the Board of Directors reviewed or approved it, or what terms governed the representation. In the absence of this foundational information, the Court cannot meaningfully assess whether the engagement was properly authorized or whether proposed counsel satisfies the disinterestedness standard of § 327(a). The burden of disclosure lies squarely with the Debtor, and that burden has not been met.

25. This omission is particularly concerning given the magnitude of the decision to initiate a bankruptcy proceeding and retain legal counsel. Under both standard nonprofit governance principles and the Association's governing documents, the Board bears fiduciary responsibility for major corporate actions. Retaining bankruptcy counsel without clear authorization from the Board undermines the legitimacy of the engagement and raises further questions about who is directing the Debtor's legal and strategic decisions.

26. Absent formal board approval, approval of counsel's engagement risks ratifying a formal but unauthorized arrangement orchestrated by an interested third party, Lemonjuice, whose influence over the Debtor is well-documented. In this context, court approval of counsel without confirming that proper internal procedures were followed would effectively bless an undisclosed governance structure that bypassed the Association's elected representatives.

27. In the absence of any board resolution or formal authorization, and where the same party — Lemonjuice — appears to serve simultaneously as financier, manager, and

de facto decision-maker, the neutrality of proposed counsel cannot be presumed. The Court cannot assess disinterestedness under § 327(a) without first determining whether proper authority existed to engage counsel in the first instance.

### VI. Failure to Disclose Prior Engagements and Related Party Involvement

28. The Application notes that H&K previously served as counsel to the Debtor in the Pinecrest Pigeon Forge HOA, Inc., chapter 11 case (In re No. 21-03759, Bankr. M.D. Tenn.) a case before this Court involving a similarly situated timeshare association. While the Application frames this prior engagement as a qualification, it bears noting that both *Pinecrest* and the present case share not only legal characteristics, but a common operational thread: the quiet but substantial influence of Lemonjuice.

29. While the Application invokes *Pinecrest* to showcase H&K's expertise, the analogy is notable for a different reason: both matters involve financially distressed timeshare properties, liquidation strategies driven by non-owner third parties, and limited transparency around management agreements. In each case — whether in *Pinecrest* or here under Lemonjuice's control —H&K's retention raises substantial questions under § 327(a) about the firm's independence and potential insider influence.

30. Although Lemonjuice is not named in the Application, public records reflect its direct involvement in both cases. In *Pinecrest*, Lemonjuice was similarly linked to management and restructuring efforts. The fact that H&K has now been proposed in two timeshare liquidations involving Lemonjuice-affiliated associations raises broader concerns about structural conflicts and whether proposed counsel can independently represent the interests of the estate — especially in a case where Lemonjuice is also alleged to be a major secured creditor.

31. The reuse of counsel across structurally similar cases involving the same third-party management firm underscores the importance of full disclosure and strict compliance with § 327(a). The Court's role as gatekeeper is especially critical where the same law firm and business model are reappearing across Chapter 11 filings with overlapping factual patterns — particularly when those patterns suggest a developing practice in which Lemonjuice exercises operational and financial control that remains largely unexamined unless expressly brought to the Court's attention.

32. This case presents an opportunity to examine that control directly, and to ensure that Lemonjuice's influence over management, financing, and legal strategy is fully disclosed and properly considered in evaluating counsel's eligibility under § 327(a).

33. The Application fails to disclose any prior professional relationship between H&K and Lemonjuice or its affiliates, despite referencing the firm's experience in a similar liquidation in which Lemonjuice played a central role. If such a relationship exists, it constitutes a connection to a party in interest under Fed. R. Bankr. P. 2014(a) and must be affirmatively disclosed. The absence of such disclosure further undermines the transparency required for approval under § 327(a).

### VII. Absence of Authority to Represent Hiawatha West

34. Hiawatha West is a distinct legal entity from Hiawatha East, with its own Declaration of Horizontal Property Regime dated August 3, 1982, and its own governing board. This is confirmed by the Debtor's own statements in the related adversary proceeding, *Hiawatha Manor Association v. Carrara*, Adv. No. 1:25-ap-90021 (Bankr. M.D. Tenn.), ¶ 11, which identifies Hiawatha West's governing Declaration as separate from the declarations that govern Hiawatha Manor and Hiawatha Manor I. As such, any corporate action on behalf of Hiawatha

9

Case 2:25-bk-01916    Doc 51    Filed 06/30/25    Entered 06/30/25 13:06:13    Desc Main
Document    Page 9 of 18

West — including a bankruptcy filing or retention of counsel — requires its own board resolution or other formal authorization.

35. Although the Chapter 11 petition filed on May 6, 2025, purports to include both Hiawatha East and Hiawatha West as debtors, the Application to employ Holland & Knight LLP does not clarify whether the proposed representation is jointly authorized by both entities. To date, no board resolution, written consent, or other formal authorization from Hiawatha West has been filed either approving the filing of the Chapter 11 petition or authorizing the retention of Holland & Knight. This ambiguity is especially problematic given that Hiawatha West has been referenced in the related adversary proceeding, *Hiawatha Manor Association v. Carrara*, and appears to be treated as a co-debtor despite no evidence of corporate consent.

36. The absence of any documented consent from Hiawatha West raises significant concerns under Bankruptcy Rule 2014 and 11 U.S.C. § 327(a), which require full disclosure of the scope and source of a professional's retention. If Holland & Knight is representing both associations without separate engagement authority or board approval from Hiawatha West, its disinterestedness and eligibility to serve as estate counsel are in serious doubt. At a minimum, the Application fails to establish that the proposed employment is properly authorized as to all parties it purports to represent.

### VIII. Conflicts of Interest and Risk of Commingled Representation

37. The uncertainty as to whether H&K is properly authorized to represent Hiawatha West raises additional concerns, including whether common funds — such as assessment revenues or reserve accounts — have been used to finance legal services on behalf of a non-debtor entity, and whether a conflict of interest exists if the interests of Hiawatha East and

10

Case 2:25-bk-01916   Doc 51   Filed 06/30/25   Entered 06/30/25 13:06:13   Desc Main
Document    Page 10 of 18

Hiawatha West diverge with respect to liquidation strategy, assessment recovery, or the allocation of sale proceeds.

38. To date, the Application includes no documentation — such as a board resolution, engagement letter from Hiawatha West, or a separate bankruptcy petition — authorizing H&K to represent Hiawatha West. Without such formal authority, the firm cannot satisfy the disinterestedness standard required under 11 U.S.C. § 327(a).

39. Given the lack of documented authorization from Hiawatha West, this objecting party respectfully requests that the Court require full disclosure of the scope and basis of H&K's representation. In the absence of such authority, any approval of employment should be limited to Hiawatha East only, pending further review. If no proper authorization exists as to Hiawatha West, any approval of employment should be expressly limited to Hiawatha East, with separate review required before extending that authority to Hiawatha West or permitting any related billing.

40. The Board of Directors of Hiawatha East signed a Written Consent on March 14, 2025 — almost two months before the May 6, 2025 petition date. It appears this delay may have been used to ensure that Hiawatha West could be included in the case, yet no evidence has been provided as to whether Hiawatha West contributed to the operating expenses of Hiawatha East incurred during that time. If Hiawatha East bore the cost while Hiawatha West gained procedural standing, that reflects a direct conflict of interest.

41. Further, if Lemonjuice influenced or decided the timing of the filing — as its operational control suggests — then its relationship with H&K may extend beyond client representation and into case strategy, undermining the independence of the Association. Unless there is a documented agreement between Hiawatha East and Hiawatha West concerning shared

11

Case 2:25-bk-01916   Doc 51   Filed 06/30/25   Entered 06/30/25 13:06:13   Desc Main
Document    Page 11 of 18

counsel and joint expenses, the current structure favors Lemonjuice's interests at the potential expense of Hiawatha East's co-owners.

### IX. Omission of Executory Contracts and Misclassification of Secured Claims

42. The Debtor's Schedule D identifies Holiday Property Partners, LLC — an entity affiliated with or doing business as Lemonjuice — as a secured creditor. However, a UCC Certified Search Report from the Tennessee Secretary of State reveals no perfected lien in favor of either Holiday Property Partners, LLC or Lemonjuice. Under applicable law, a secured creditor must possess both a valid security agreement and a properly perfected lien – typically by filing a UCC-1 financing statement — to assert a secured claim.

43. Under 11 U.S.C. § 544(a)(1), any security interest that is not perfected as of the petition date may be avoided by the debtor-in-possession and is therefore unenforceable as a secured claim in bankruptcy. In the absence of a perfected lien, the designation of Holiday Property Partners, LLC as a secured creditor is unsupported and misleading. *(See Exhibit C: Tennessee Secretary of State Certified UCC Search Report.)*

44. This misclassification improperly elevates the claim of Holiday Property Partners, LLC — and by extension, Lemonjuice — in the creditor hierarchy, potentially distorting both the claims process and distribution of estate assets. By endorsing an inaccurate secured designation without supporting documentation or disclosure, proposed counsel has compromised the transparency required under 327(a) and created the appearance of partiality toward Lemonjuice and its affiliate.

45. This misclassification is not an isolated anomaly. The Debtor also failed to disclose any contractual relationship with Lemonjuice in Schedule G, despite the existence of a

Management and Repositioning Services Agreement ("*RSA*") dated February 28, 2024 and its subsequent amendment. That agreement, which defines Lemonjuice's operational role and entitles it to compensation and control over core aspects of the Association's restructuring, remains active and executory. Its omission from Schedule G not only violates the disclosure requirements of 11 U.S.C. § 521(a)(1)(B)(iii) and Fed. R. Bankr. P. 1007(b)(1)(C), but also masks the true extent of Lemonjuice's involvement in the Debtor's affairs.

## X. Retroactive Approval Is Not Automatic Where Disinterestedness and Authority Are in Question

46. Although courts may routinely grant retroactive approval of counsel, such approval is not automatic. It is particularly inappropriate where questions of disinterestedness, authority, or nondisclosure are present. In this case, the Application to Employ Holland & Knight LLP was not filed until June 9, 2025, more than a month after the Chapter 11 petition was filed on May 6, 2025.

47. During that period, Holland & Knight acted on behalf of the Debtor without formal court authorization. While retroactive approval may be permissible in ordinary cases, it should not be granted where the circumstances raise significant concerns about: (i) who authorized the engagement; (ii) who paid for or directed prepetition services; and (iii) whether counsel's role was shaped by a party in interest — Lemonjuice — whose own agreements with the Debtor remain undisclosed.

48. Retroactive approval is not intended to sidestep the gatekeeping function imposed by § 327(a) and Bankruptcy Rule 2014. That gatekeeping function is especially important where insider influence, structural conflicts, or questions of authority are present. In this case, where Lemonjuice appears to have exerted significant prepetition control and the basis for H&K's

retention remains unclear, the delay in seeking approval only heightens the need for full transparency and careful judicial oversight.

### XI. Disproportionate Legal Firepower Raises Questions of Necessity and Oversight

49. The Debtor is an insolvent nonprofit association with no employees of its own, limited financial activity, and no long-term operations beyond collections, liquidation planning, and short-term rental or maintenance efforts managed by Lemonjuice. Yet it has retained one of the largest law firms in the country — at hourly rates reaching $900 — to represent it in what appears to be a relatively straightforward Chapter 11 case. The mismatch between the Debtor's financial posture and the scale of professional resources being deployed raises serious questions about the necessity and proportionality of the proposed engagement.

50. The justification for retaining a top-tier national firm is further undermined by the absence of competing bids, transparency into the selection process, or any showing that such representation is cost-effective for the estate. This imbalance becomes especially concerning when the party funding and coordinating the representation — Lemonjuice — stands to benefit from the outcome and may have influenced the selection process.

51. While fee applications will be addressed at a later stage, the scope and scale of the proposed engagement are relevant to the threshold determination under § 327(a). In cases involving modest assets or vulnerable stakeholders, excessive legal spending risks further depleting estate resources and undermining confidence in the process. Where an insider appears to have shaped both the need for representation and the choice of counsel, heightened judicial scrutiny is not only appropriate — it is essential.

14

## XII. Pattern of Non-Disclosure Regarding Prepetition Contracts

52. A pattern of nondisclosure regarding Lemonjuice's contractual relationship with the Debtor further undermines the Application.

53. In February 2024, the Debtor executed a contract with Lemonjuice. The existence of this agreement was not disclosed to the co-owner community until July 2024, and even then, the agreement itself was withheld. When later referenced, it was described as "confidential," and no copy was provided to members.

54. In the February 24, 2025 recorded meeting, Lemonjuice representative Kate Koeppen stated (timestamp: 31:56), "We cannot post the agreement. The agreement's confidential. It's between the Board and Lemonjuice," and (timestamp: 32:28) "The Board has a copy of the agreement and has reviewed it, but we can't post it. And part of it is because it includes confidential things such as payroll and other issues because that's part of what those funds are covering."

55. In February 2025, the Debtor executed a second agreement with Lemonjuice. This contract also was not disclosed to members and has never been listed in Schedule G, despite appearing executory in nature and involving ongoing obligations and control rights.

56. To date, the Debtor has neither recognized these agreements in its filed papers, scheduled them on Schedule G, nor moved to assume or reject them under 11 U.S.C. § 365— only passing references to their existence appear elsewhere. The omission of material executory contracts that bear directly on Lemonjuice's role in the estate is not incidental; it reflects a pattern of concealment that began even before the petition date.

57. This sustained withholding of key information—first from owners, now from the Court—raises serious concerns about transparency, governance, and the independence of

professionals proposed under § 327. It further supports the need for heightened scrutiny and full disclosure before the Application is approved.

### XIII. Conclusion and Request for Relief

For the reasons set forth above, there remain significant unresolved questions regarding the proposed employment of Holland & Knight LLP. The record does not yet establish that the firm meets the requirements of 11 U.S.C. § 327(a), particularly with respect to disinterestedness, proper corporate authorization, and full disclosure of relevant relationships and prior engagements.

Accordingly, this objecting party respectfully requests that the Court consider the following relief:

1. That the Application be withheld or deferred unless and until the Debtor supplements the record to address the issues identified above;

2. That the Court require full disclosure of all prepetition engagement materials, including any invoices, written consents, and communications involving Lemonjuice or its affiliates;

3. That any order approving employment be limited to Hiawatha East unless and until independent authorization by Hiawatha West is demonstrated through formal board action or equivalent documentation;

4. That the Court defer consideration of retroactive approval of any fees pending further review of the circumstances of the firm's engagement and role; and

5. That the Court grant such other and further relief as it deems just and appropriate.

## XIV. Reservation of Rights

This Objection is submitted without prejudice to the right to raise additional objections, to supplement this filing as further information becomes available, or to join in any related objections filed by other parties. The undersigned expressly reserves all rights under applicable law and the Federal Rules of Bankruptcy Procedure.

Dated: June 30, 2025                                             Respectfully submitted,

        /s/ Linda (Lindstrom) Simmons
        Linda (Lindstrom) Simmons
        9643 Chanteclair Circle
        Highlands Ranch, CO 80126
        Telephone: (615) 594-2866
        Email: lindasimmons2866@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2025, a true and correct copy of the foregoing Objection to Debtor's Application for Entry of an Order Approving the Employment of Holland & Knight LLP as Bankruptcy Counsel for the Debtor and Debtor in Possession Retroactive to the Petition Date was filed electronically with the Court and served via the CM/ECF system on all parties entitled to electronic notice in this case, and that I served via U.S. Mail the parties listed on Exhibit D.

Exhibits A through D are submitted in a separately filed document titled "Exhibits to Objection to Debtor's Application for Entry of an Order Approving the Employment and Retention of Holland & Knight LLP as Counsel for the Debtor in Possession Retroactive to the Petition Date."