# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc., | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

**NOTICE OF MOTION AND OPPORTUNITY TO OBJECT**

Pursuant to Local Rule 9013-1, no hearing will be held on this Motion unless a response or objection is filed with the Clerk of the Court within fourteen (14) days from the date of service. If no timely response is filed, the Court may grant the relief requested without further notice or hearing. If a response is filed, the Court will schedule a hearing, and Movant will provide notice of the date and time of the hearing to the responding party.

## MOTION OF LINDA SIMMONS FOR
## RULE 2004 PRODUCTION OF DOCUMENTS

### I. INTRODUCTION AND REQUEST FOR RELIEF

Linda Simmons, (the ***"Movant"***), a fully paid co-owner of timeshare interests at Hiawatha Manor Association East, Inc., *(**"Hiawatha East"**)* and a named defendant in the related adversary proceeding, *Hiawatha Manor Association, Inc., v. Charles H. Abernathy, et al.,* Adv. Proc. No. 25-90051, respectfully submits this motion (the ***"Motion"***) pursuant to 11 U.S.C. § 105(a) and Rule 2004 of the Federal Rules of Bankruptcy Procedure.

Movant seeks authorization to conduct a focused document examination into matters affecting the administration of the estate and the rights of co-owners specifically concerning undisclosed prepetition agreements that appear to govern the Debtor's operations, its obligations to its management company, Lemonjuice Solutions, LLC (***"Lemonjuice"***) and the structure and beneficiaries of the proposed § 363(h) sale of Hiawatha Manor Association West (***"Hiawatha West"***). These agreements were never disclosed to the membership prior to the petition date, were omitted from the Debtor's schedules, and continue to influence the direction of this case.

1

Movant does not seek to challenge or interpret the agreements at this time, but simply to obtain any supporting documentation the Debtor may rely on in support of its actions. The requests are limited in scope and tailored to support transparency. If the Debtor acted with proper authority and transparency, it should already have documentation to that effect. Movant simply seeks to clarify the record now—rather than leave key facts obscured until it is too late to correct them.

Accordingly, Movant seeks authority to serve a subpoena on the Debtor's management company, Lemonjuice, as further described in the "Requested Relief" section below.

## II. CLARIFICATION REGARDING ADVERSARY PROCEEDING

Movant has never opposed the sale of the Hiawatha East property. Her filings have focused exclusively on issues of transparency, oversight and proper estate administration. To the extent her earlier participation in the adversary proceeding, *Hiawatha Manor Association, Inc. v. Abernathy*, Adv. Proc. No. 25-90051, may have suggested otherwise, Movant clarifies that she now seeks discovery solely through Rule 2004, the appropriate procedural vehicle for matters affecting the Hiawatha East estate.

Although Movant's concerns now extend to the handling of the Hiawatha West property within this bankruptcy, that awareness has only recently developed and further underscores the need for full transparency regarding inter-association transactions and all decisions bearing on estate administration.

## III. BACKGROUND

Movant is a longtime co-owner of timeshare interests at Hiawatha East and a party in interest in this Chapter 11 proceeding. She has actively participated in the case to raise concerns affecting co-owners and to promote transparency in the estate's administration.

2

On May 6, 2025, Hiawatha East filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate as a debtor in possession. To date, Movant has been the sole individual actively monitoring the proceedings and raising issues on behalf of the broader ownership.

Throughout the case, Movant has sought clarification regarding the management of the Association, the use of estate funds, and the contractual and operational arrangements between the Debtor and its third-party manager, Lemonjuice. Despite repeated informal and formal efforts, key documents and financial disclosures have not been made available in the public record.

Although the Debtor listed HPP Property Services, LLC (**"HPP"**) as a secured creditor in Schedule D, the filing did not disclose that HPP does business as Lemonjuice. The name "Lemonjuice" does not appear in the Schedules, though the address listed for HPP matches that of Lemonjuice's principal office. The doing business as (d/b/a) relationship appears only once in the record—in Document 1, the Written Consent of the Board. No supporting documentation—such as a security agreement or UCC-1 filing—has been produced or publicly disclosed.

Movant previously obtained a certified UCC search from the Tennessee Secretary of State against Hiawatha Manor Association, which returned no results. Movant has also found no fixture filings with the Cumberland County Register of Deeds. A copy of the UCC search was submitted as an exhibit to Movant's objection to the application to appoint Debtor's counsel.

This Motion seeks authorization to obtain records bearing directly on the estate's obligations, the roles of non-debtor parties in administering and liquidating estate assets, and the potential for undisclosed liabilities that may affect co-owners following confirmation of a plan.

## IV. Legal Standard

Bankruptcy Rule 2004 authorizes broad examination of "the debtor's acts, conduct, or property; the debtor's liabilities and financial condition; and any matter which may affect the administration of the estate."

Movant previously served a First Request for Production of Documents on Debtor's counsel in the adversary proceeding. Debtor's counsel declined to produce any documents, stating that discovery was not permitted until after a Rule 26(f) conference. When Movant attempted to schedule that conference, counsel refused, asserting that "you are but one of thousands of potential defendants" and that it would be "premature to schedule at this time." (See Exhibit B, Email chain dated June 24–July 1, 2025.) This procedural deadlock has left Movant with no meaningful alternative but to seek discovery under Rule 2004.

## V. Rule 2004 Discovery is Necessary to Clarify Estate Obligations and Protect Co-Owner Rights

As set forth above, good cause exists for authorizing discovery under Rule 2004. The issues raised by Movant concern (1) the risk of post-confirmation liability for fully paid co-owners, (2) potential preferential transfers of timeshare intervals to insiders, (3) the administration of the estate, (4) the use of this Chapter 11 proceeding to facilitate the sale of non-debtor property, and (5) the validity and enforceability of undisclosed contracts with Lemonjuice Solutions.

Discovery into these areas is necessary to clarify the estate's obligations, protect co-owner rights, and ensure transparency in the administration of this case. It will also clarify the validity and scope of contractual obligations, the treatment of co-owner rights, and the use of

4

estate resources to advance objectives that may fall outside the proper bounds of this Chapter 11 case.

To date, the public record contains insufficient information to clarify Lemonjuice's legal and financial role, the existence and enforceability of all relevant contracts, the authority for estate expenditures, or the justification for using the bankruptcy process to pursue a sale of non-debtor property. These uncertainties are especially troubling where non-debtor insiders may be exercising ongoing influence over estate decisions, and where key transactions—such as the January 8, 2025 transfer of 70 timeshare weeks—appear strategically timed or insufficiently documented.

Movant is concerned that ongoing estate obligations, governance decisions, and financial flows may be substantially influenced by non-debtor insiders, including Lemonjuice, without adequate transparency or court supervision. These are matters squarely within the scope of Rule 2004.

Rule 2004 is the appropriate procedural vehicle to investigate these matters because they implicate not only creditor recovery but also the potential imposition of post-confirmation obligations on co-owners. The breadth of Rule 2004 permits inquiry into prepetition conduct, governance issues, and the actions of third parties that bear directly on the financial condition and integrity of the estate. Courts routinely authorize such discovery where insider relationships or affiliated entities may distort the bankruptcy process or affect creditor rights.

Many of the documents sought through this Motion concern transactions, contracts, and transfers that should have been disclosed in the Debtor's initial filings under 11 U.S.C. § 521 and Bankruptcy Rule 1007. To the extent the volume of discovery appears substantial, that scope reflects the prior failure of the Debtor to provide full and accurate disclosure, not any overreach

5

by Movant. The size of the request should not be used to argue against relief under Rule 2004, as it directly corresponds to the extent of missing or obscured information in the record.

While Movant may be the only owner actively raising these concerns, the fact that a single layperson identified numerous omissions, undisclosed transactions, and procedural irregularities should weigh in favor of granting this Motion — not against it. The absence of broader participation reflects not a lack of issues, but a lack of engagement encouraged by the Debtor itself. In a May 2025 notice, owners were told that "no action is required" (see Exhibit C), a message likely to suppress scrutiny.

Representatives of Lemonjuice and a member of the Debtor's Board stated during the April 9, 2025 Zoom meeting that owner objections or questions may reduce estate funds or cause harmful delays (see Exhibit C-2). Such framing discourages co-owners from exercising their rights to information or due process, particularly in a case with significant insider involvement and minimal external oversight. Rule 2004 exists precisely to ensure that critical information does not depend on voluntary disclosures or insider resources.

The transcript excerpt in Exhibit C-2, and all other excerpted transcripts referenced herein, are accompanied by a declaration of Movant verifying their accuracy, attached as Exhibit T.

Movant therefore seeks leave to issue a subpoena to Lemonjuice, in its capacity as the Debtor's prepetition and post-petition management company, and the apparent custodian of many of the records necessary to evaluate the estate's operations and obligations. The requested discovery is limited to documents already in existence and described with specificity in the attached Schedule, Exhibit A.

6

# VI. SCOPE OF REQUEST

Movant seeks limited document discovery concerning five interrelated issues affecting the administration of the estate and the interests of co-owners and creditors. The requests are narrowly tailored to minimize burden and focus on key agreements and operational decisions that remain absent from the case record.

### A. Potential Post-Confirmation Liability for Fully Paid Co-Owners

In July 2025, Movant formally requested that Debtor's counsel include protective language in the proposed plan to ensure that fully paid owners could not be pursued for post-confirmation obligations. Counsel declined to commit to specific language, stating that while they would "make sure to take [Movant's] concerns into account" when a plan was drafted, it would be "inappropriate for us to commit to any particular language in any plan at this stage in the case." (See Exhibit D, Email dated July 14, 2025.) Counsel's refusal to provide any assurance, despite the looming September 3rd deadline for the proposed plan, effectively left Movant's concerns unaddressed.

The Debtor's refusal to include such language raises significant concerns in light of the ongoing deed-back program, which is available only to owners who are current on their assessments and requires them to pay a $250 fee to surrender an interest that is already fully paid. Requiring such a fee under the implicit condition of ongoing liability imposes a coercive burden that is neither required by the recorded declarations nor authorized by any existing court order. The structure places the financial burden on compliant owners and preserves Lemonjuice's ability post-petition to assert claims against them unless they affirmatively forfeit their interests through an additional payment.

A letter dated December 17, 2024, from Hiawatha East President Archie Doby was publicly posted to the Association's website and included a series of questions and answers about the anticipated bankruptcy. One answer stated that "former owners will not have any further obligations or repercussions" once the bankruptcy is complete and the property sold (see Exhibit E).

On March 10, 2025, Movant received an email response from Lemonjuice representative Kate Koeppen addressing a series of questions. In that correspondence, Ms. Koeppen stated that "owners are not responsible for any deficiencies, only the Association is responsible." (See Exhibit F), echoing other prepetition messaging and unequivocally representing that fully paid owners would not be exposed to continuing financial obligations following the sale of the property.

During the February 24, 2025 Zoom meeting, an owner asked whether retaining their week and awaiting distribution would release them from further obligations. Lemonjuice representative Kate Koeppen responded, "Yes, that's correct. Once you receive distribution proceeds, you are done. You are no longer an owner of the timeshare." When asked whether the owner would remain liable for any future expenses or court costs, she again responded in the negative. The full excerpt is attached as Exhibit G.

This exchange reinforced Lemonjuice's repeated assurances that owners who did not deed back would remain protected from future liability once the bankruptcy was complete.

These assurances are difficult to reconcile with the Debtor's current position: declining to include protective Plan language, requiring fully paid owners to pay $250 to surrender their interests, and refusing to confirm that those who retain their weeks will be released from future liability. Notably, in communications to members, the Debtor has characterized the bankruptcy

8

process as requiring no further action by owners (see Exhibit C). This type of messaging may dissuade owners from participating in the case, even though the proposed plan and the Lemonjuice agreements appear to impose continuing obligations on fully paid co-owners.

Discovery is necessary to determine whether the estate or its agents are relying on prepetition contracts, internal policies, or implied obligations to assert continuing control over owners who have no current debt and no meaningful voice in the proceeding—despite repeated assurances that no further claims would be asserted.

### B. Potential Preferential Transfer of 476 Timeshare Intervals to Lemonjuice

Movant seeks discovery into a potential preferential transfer of 476 timeshare intervals from the Debtor to Lemonjuice, a transaction first disclosed during the February 24, 2025 Zoom meeting when Lemonjuice representative Kate Koeppen stated that these intervals were in the process of being transferred from the Association to Lemonjuice in satisfaction of a $300,000 loan. (See Exhibit H.)

Public records confirm that a substantial number of intervals were transferred to Lemonjuice in early 2025, including deeds recorded in the Cumberland County Register of Deeds at Book 1701, Page 826; Book 1716, Pages 2418 and 2432; and Book 1719, Page 762. The earliest of these was recorded on February 26, 2025—just 70 days before the Debtor filed its Chapter 11 petition on May 6, 2025. (See Exhibit I.)

Each recorded deed refers to nominal consideration ("$10 and other good and valuable consideration") and cross-references accompanying instruments that specifically enumerate numerous additional intervals transferred. The underlying Purchase and Assignment Agreement,

9

Case 2:25-bk-01916    Doc 63    Filed 07/29/25    Entered 07/29/25 15:11:30    Desc Main
Document      Page 9 of 20

dated February 14, 2025, confirms that Lemonjuice had already advanced funds to the Association prior to the execution of the contract. Yet the deed transfer occurred just ten days later and was prepared, signed, and recorded in less than two weeks—strongly suggesting that the selection of the intervals and the preparation of the transfer documents had been completed in advance.

Despite the significance of the transaction, the Debtor failed to disclose it in its Statement of Financial Affairs. In response to Question 4—which requires disclosure of all payments or transfers to creditors within 90 days of filing—the Debtor stated "None." The February 26, 2025 transfer to Lemonjuice falls squarely within that window and was made in satisfaction of a $300,000 debt. This omission raises serious questions about the accuracy of the Debtor's filings and the transparency of its relationship with Lemonjuice.

Movant seeks discovery into the original loan terms, the selection and preparation of the transferred intervals, and whether the transfer was in satisfaction of an antecedent debt or constituted a contemporaneous exchange. Because the earliest recorded deed falls well within the 90-day preference period under § 547(b)(4)(A), insider status is not required to support avoidance. However, if Lemonjuice is deemed an insider—based on its prepetition managerial role, asserted secured creditor status, and control over estate decisions—the transfer may also fall within the extended one-year lookback period under § 547(b)(4)(B), further supporting the need for scrutiny.

In a December 17, 2024 letter to all owners (Exhibit E), the Debtor's Board President stated that "Hiawatha East Resort is now insolvent" and announced the intention to file bankruptcy. This written admission predates the March 2025 transfer of 476 timeshare weeks to

Lemonjuice and supports the conclusion that the Debtor was insolvent at the time of the transfer, as required under 11 U.S.C. § 547(b)(3).

Regardless of avoidance analysis, the transaction raises serious concerns about Lemonjuice's ability to self-allocate estate assets in satisfaction of its own claims while simultaneously exercising operational control. The absence of disclosure in the Debtor's filings further supports the need for inquiry into the legal and financial basis of the transfer, its impact on the estate's projections, and any preferential treatment conferred on Lemonjuice.

In an August 1, 2024 Zoom meeting, an owner asked whether 2024 would be the final year for maintenance fees, noting that owners had been told as much earlier in the year. Lemonjuice representative Kate Koeppen did not dispute the characterization and responded only that it would "depend on if we do have to go the bankruptcy route." Coupled with this early reference to a possible bankruptcy, the exchange suggests that Lemonjuice anticipated the filing well in advance and may have used the fee suspension to encourage short-term compliance while allowing receivables to accrue that may be treated as prepetition or post-petition debt. The suspension also had a direct financial benefit for Lemonjuice: when it acquired the 476 intervals, it was no longer obligated to pay maintenance fees on them, effectively receiving assets stripped of ongoing liability. (See Exhibit J, Transcript Excerpt from August 1, 2024 Zoom Meeting.)

The decision to suspend assessments—despite mounting operational costs—raises serious questions about whether estate decisions were made in the interest of the Association or structured to benefit Lemonjuice at the expense of other stakeholders.

Movant seeks discovery into the financial assumptions and projections underlying this shift, including whether such planning contributed to the estate's insolvency or insider-preferred transactions.

The cumulative effect of these events—the suspension of maintenance fees, the accrual of undocumented debt to Lemonjuice, the subsequent transfer of 476 timeshare weeks, and the quiet solicitation of deed-backs—raises the possibility that the Debtor's insolvency was not incidental, but strategically engineered. The pattern suggests a prearranged course of action in which Lemonjuice positioned itself to receive estate property and receivables at minimal cost, while avoiding disclosure obligations and limiting the ability of co-owners to object. Movant seeks discovery to determine whether the Chapter 11 filing served as the final step in this strategy, and whether the bankruptcy process is being used to validate transactions that were structured in advance for the benefit of insiders.

### C. Lemonjuice's Dual Role and Insider Control

Movant seeks discovery into Lemonjuice's pervasive role as the management company for both Hiawatha East (the Debtor) and Hiawatha West, and the extent to which it has influenced estate governance, ownership transfers, and legal strategies in ways that may benefit insiders while limiting co-owner transparency. Lemonjuice's dual control over both associations—and its simultaneous roles as manager, financial agent, and possible post-confirmation beneficiary—warrant heightened scrutiny.

Movant specifically seeks records of deed-back and quitclaim transfers solicited or accepted by Lemonjuice, both before and after the bankruptcy filing, from owners at Hiawatha East and Hiawatha West.

12

Case 2:25-bk-01916    Doc 63    Filed 07/29/25    Entered 07/29/25 15:11:30    Desc Main
Document      Page 12 of 20

These transactions directly affect property ownership, control of voting rights, distribution of sale proceeds, and estate administration—particularly as Lemonjuice has positioned itself as a key actor across both associations. While West is not a debtor, its property is subject to a § 363(h) adversary proceeding filed by the Debtor, and the transfer or concentration of West intervals—whether to Lemonjuice or to the West Association—may directly influence how sale proceeds are treated or allocated. Similarly, deed-backs from East owners—particularly those occurring post-petition—may involve estate property and should be subject to disclosure and oversight, as Hiawatha East is the Debtor, and its ownership structure directly impacts estate composition, creditor recoveries, and the rights of non-transferring co-owners.

Movant is aware that a substantial number of owners have already surrendered their timeshare interests through deed-back or quitclaim arrangements outside any formal court-supervised process. (See Exhibit K for East pre-petition transfers; Exhibit L for East post-petition transfers; and Exhibit M for West transfers.) These transactions raise broader questions about whether the estate is being restructured or simply cleared for transfer to insiders.

Compounding these concerns, no information has yet been filed explaining how sale proceeds—particularly from the proposed sale of Hiawatha West—will be distributed, whether any benefit will flow to co-owners, or how Lemonjuice's claims or compensation will be addressed. In the absence of that clarity, the volume and timing of deed-backs may reflect more than routine surrender; they may signal an estate being repositioned for transfer without meaningful co-owner oversight. This further supports the need for discovery into the nature and handling of these ownership transfers.

In the course of preparing this Motion, Movant conducted a public deed search using "Lemonjuice" as the grantee and identified multiple quitclaim transfers of timeshare interests recorded in 2025, in which Lemon Juice Capital, LLC appears as the direct recipient rather than as an agent for the Association. The precise property affiliation of these interests is not always clear from the recorded instruments. Some may relate to the 476-week transfer referenced earlier in this motion, allegedly executed in satisfaction of a $300,000 prepetition debt. However, these additional deeds have not been identified, explained, or disclosed by the Debtor in any filing, and the manner in which property records are indexed in the Cumberland County Register of Deeds makes it difficult to determine whether the transfers are part of that transaction or reflect further conveyances to Lemonjuice. This ambiguity is particularly concerning where any such deeds were executed or recorded post-petition, as they may involve estate property and implicate 11 U.S.C. §§ 541 or 549. Movant seeks discovery to clarify the number, timing, legal basis, and internal treatment of any transfers in which Lemonjuice received timeshare interests directly. A list of such recorded transfers is attached as Exhibit N.

The requested discovery is limited to factual records of ownership transfers and associated communications. Movant does not seek to challenge the transfers at this time, but only to clarify their number, timing, and treatment for purposes of estate transparency and co-owner rights.

### D. Use of East Bankruptcy to Facilitate Sale of Hiawatha West and Questionable Inter-Association Transfers

Movant seeks discovery into the Debtor's use of this Chapter 11 proceeding to facilitate the proposed sale of property owned by Hiawatha West, a non-debtor entity. Although Hiawatha West has not filed for bankruptcy, its property is subject to a § 363(h) adversary proceeding brought by the Debtor, and Movant has significant concerns that estate funds from Hiawatha East

14

Case 2:25-bk-01916    Doc 63    Filed 07/29/25    Entered 07/29/25 15:11:30    Desc Main
Document    Page 14 of 20

are disproportionately supporting legal and administrative expenses associated with that sale—including the burden of all bankruptcy administrative and professional fees. The Debtor has not disclosed any cost-sharing agreement, reimbursement arrangement, or other mechanism to ensure that Hiawatha East co-owners are not unduly funding the proposed disposition of West's property.

This situation raises serious questions about the proper allocation of administrative expenses and the fiduciary duties owed to Hiawatha East's creditors and co-owners. Without clarity on cost-sharing, it appears Hiawatha East's estate is absorbing expenses for the benefit of a separate entity, potentially diminishing recoveries for its own stakeholders. Discovery is crucial to determine the financial arrangements, if any, between the Debtor and Hiawatha West regarding this sale.

Movant's concerns are compounded by a significant January 8, 2025 transfer of 70 timeshare intervals from Hiawatha West to Hiawatha East, which the Debtor asserts extinguished a debt between the associations. Despite its importance and proximity to the petition date, no documentation has been produced to explain the basis of that debt, the method of valuation, or the terms of the transfer. Given the involvement of Lemonjuice as manager of both entities, the transaction raises questions of potential insider influence and preferential treatment under 11 U.S.C. § 547.

A copy of the recorded deed evidencing the January 8, 2025 transfer is attached. (See Exhibit O.) The deed reflects a stated consideration of "$10.00 and other good and valuable consideration not mentioned herein" and identifies Lemonjuice as the document preparer. It also instructs that the recorded instrument be returned to Lemonjuice at its Orlando, Florida office, and that tax bills be sent to a Crossville, Tennessee P.O. Box associated with Lemonjuice. These

15

Case 2:25-bk-01916   Doc 63   Filed 07/29/25   Entered 07/29/25 15:11:30   Desc Main
Document    Page 15 of 20

details further underscore Lemonjuice's central role in the transaction and reinforce concerns regarding its structure and underlying motivation.

In light of this recorded transfer and the absence of disclosure regarding its terms or financial basis, Movant seeks targeted discovery to determine:

(1) whether the January 8, 2025 transaction was supported by valid consideration,

(2) whether it constitutes a preferential transfer under 11 U.S.C. § 547, and

(3) whether Lemonjuice's dual role as manager of both entities unduly influenced the structure, timing, or execution of the deal.

Further supporting the need for discovery, Lemonjuice issued a Frequently Asked Questions document to Hiawatha West owners dated May 5, 2025, which stated that the purpose of the bankruptcy was to obtain a federal court order "to oversee the sale proceeding and also ensure that everything is carried out adequately regarding the sale of Hiawatha West up to and including distribution of the net proceeds of any sale amount to the current owners." (see Exhibit P.) The document repeatedly refers to West owners receiving a share of the proceeds, makes no mention of Hiawatha East, and provides no explanation of how East is funding the legal and administrative costs of that sale. This document reinforces concerns that the bankruptcy was structured to benefit West owners without transparency, and that Hiawatha East's resources are being used to facilitate the sale of non-debtor property without appropriate safeguards, disclosures, or oversight.

### E. Failure to Disclose Material Agreements to Members

Movant seeks discovery into whether the Debtor's contracts with Lemonjuice—specifically the February 28, 2024 Management and Repositioning Services Agreement (***"MRS Agreement"***) and the February 14, 2025 Purchase and Assignment of Intervals, Liens, and

16

Case 2:25-bk-01916   Doc 63   Filed 07/29/25   Entered 07/29/25 15:11:30   Desc Main
Document      Page 16 of 20

Receivables Agreement—were ever properly disclosed to or approved by the Association's membership. Such disclosure and approval may be required under the Association's recorded declaration and are consistent with the fiduciary duties imposed by Tennessee nonprofit and timeshare law.

The February 28, 2024 MRS Agreement was executed shortly before the March 2024 membership meeting. However, the notice for that meeting, sent around the same time, made no mention of Lemonjuice or any signed agreement (see Exhibit Q). No Zoom access was provided for the March meeting, and Movant received no further communications or meeting notices from the Debtor or Lemonjuice between March 2024 and the end of 2024.

The lack of transparency regarding Lemonjuice's engagement continued into early 2025. During the February 2025 Zoom meeting, Board members were asked whether a recording existed of the July 2024 meeting at which Lemonjuice had reportedly been introduced or selected. One Board member responded, "We were still deciding. We let the—basically the people to decide whether they wanted to go with Lemonjuice—or a recommendation. So we just followed the recommendation of the people." (See Exhibit R.)

However, this statement appears to describe a decision-making process that occurred months after the February 2024 execution of the management agreement between Lemonjuice and the Association. The discrepancy raises serious questions about whether members were misled regarding the nature of the July 2024 meeting, and whether Lemonjuice's role was presented as contingent or consultative when in fact it had already been contractually secured.

17

Case 2:25-bk-01916    Doc 63    Filed 07/29/25    Entered 07/29/25 15:11:30    Desc Main
Document    Page 17 of 20

A similar lack of transparency surrounded the February 14, 2025 Purchase and Assignment Agreement, which appears to involve the transfer of significant receivables and interests to Lemonjuice or its affiliates, without advance disclosure or member approval. During the February 24, 2025 Zoom meeting, the secretive nature of this agreement became even more apparent. When Movant inquired about posting the agreement for member review, the following exchange took place:

> MS. SIMMONS: And I don't see the recording where that was presented to the Board. I wonder if you could post that on the info dot site? And also post the agreement?
>
> (32:01) MS. KOEPPEN: The – we cannot post the agreement. The agreement's confidential. It's between the Board and Lemonjuice. Um and the Association and Lemonjuice. But the agreement was presented in August and it was approved in a Board meeting in August.

The full excerpt is attached as Exhibit S.

The claim of confidentiality and "August approval" for an agreement actually executed on February 14, 2025—just ten days before this Zoom meeting—is highly suspicious and directly contradicts the stated timeline. This raises significant questions about what was truly disclosed to members and when, and suggests a deliberate attempt to obscure the agreement's true origin and terms.

Compounding these concerns, despite Ms. Koeppen's confirmation that the agreement existed and was Board-approved prior to the petition date, the Debtor failed to disclose it in Schedule G or file any verified statement explaining its omission. This omission, combined with Lemonjuice's assertion of a secured claim tied to receivables, further supports the need for discovery into the agreement's status, terms, and enforceability.

18

## VII. REQUESTED RELIEF

Movant requests that the Court enter an order authorizing issuance of a subpoena under Bankruptcy Rule 2004 to Lemonjuice Solutions, LLC, in its capacity as:

- Contracted management agent for the Debtor, Hiawatha Manor Association East, Inc.,
- Servicer of accounts and administrator of post-petition operations at the subject property, and
- Sole or primary custodian of operational, governance, and contractual records for both Hiawatha East and Hiawatha West.

The subpoena shall seek the production of documents related to the topics described above, including but not limited to board communications, contract files, accounting records, property transfers, deed-back solicitations, deed-backs in process, and deed-back completions for both Hiawatha East and Hiawatha West, and internal memoranda. This request is intended as an initial production, without prejudice to Movant's right to seek additional records or issue follow-up requests as necessary.

Movant reserves the right to request further discovery of Lemonjuice or other parties if the written production raises additional concerns or fails to provide adequate responses.

Accordingly, Movant respectfully requests that the Court enter an order:

1. Authorizing the issuance of a subpoena to Lemonjuice Solutions, LLC, pursuant to Bankruptcy Rule 2004, compelling the production of documents identified in the attached Exhibit A; and

2. Granting such other and further relief as the Court deems just and proper.

Dated: July 29, 2025                                    Respectfully submitted,


                                                        /s/ Linda Simmons
                                                        Linda Simmons
                                                        9643 Chanteclair Circle
                                                        Highlands Ranch, CO 80126
                                                        Telephone: (615) 594-2866
                                                        Email: lindasimmons2866@gmail.com


## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2025, I served a true and correct copy of the Motion of Linda Simmons for Rule 2004 Production of Documents, including Exhibit A (Document Schedule) and all supporting exhibits, by the methods indicated below:

Via CM/ECF on all registered participants:

- Blake D. Roth – Counsel for Debtor
- C. Scott Kunde – Counsel for Debtor
- Thomas H. Forrester – Counsel for Lake Tansi Village POA
- Rebecca J. Yielding – Trial Attorney, Office of the U.S. Trustee
- Office of the United States Trustee

I further certify that, pursuant to the Notice of Appearance filed by Rebecca J. Yielding (Doc. 8), I also served a copy of the Motion by U.S. Mail to:

Rebecca J. Yielding
Trial Attorney
Office of the United States Trustee
701 Broadway, Suite 318
Nashville, TN 37203



/s/ Linda Simmons
Linda Simmons
9643 Chanteclair Circle
Highlands Ranch, CO 80126
Telephone: (615) 594-2866
Email: lindasimmons2866@gmail.com