## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc. | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

## DEBTOR'S MOTION TO EMPLOY AND RETAIN BROKER

The above-captioned debtor (the "***Debtor***"), by and through its undersigned counsel, files this motion (the "***Motion***") seeking entry of an order authorizing the employment of D&C Hospitality Investments LLC, d/b/a HREC Investment Advisors ("***HREC***"), as commercial real estate broker for the Debtor, pursuant to sections 327(a), 328(a), and 330 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014, 2016, and 6005 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2014-1, 2016-1, and 6005-1 of the Bankruptcy Local Rules for the United Stated Bankruptcy Court for the Middle District of Tennessee (the "***Local Rules***"), and, in support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      The Debtor confirms its consent, pursuant to rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

5.      On May 6, 2025 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

6.      On the Petition Date, the Debtor filed two complaints commencing adversary proceedings (Adv. Pro. No. 2:25-ap-90051 and Adv. Pro. No. 2:25-ap-90052) (the "***Adversary Proceedings***") in which it seeks authority to sell the Properties (defined below), including the interests of all tenants in common, pursuant to section 363(h) of the Bankruptcy Code.

7.      Upon consummation of the sale contemplated by the Adversary Proceedings, the Debtor intends to file a plan of liquidation proposing to distribute the net sales proceeds to the defendants in the Adversary Proceedings (the "***Defendants***") and other creditors in accordance with the Bankruptcy Code, after payment of administrative claims, taxes, secured debts, and other obligations.

8.      On July 15, 2025, the Court entered its *Order Authorizing the Employment of Commercial Real Estate Exchange, Inc.* (Dkt. No. 59), authorizing the retention of Commercial Real Estate Exchange, Inc. ("***Crexi***") as an auctioneer to assist with the Debtor's marketing and sale process.

9.      The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of title 11 of the Bankruptcy Code.

## RELIEF REQUESTED

10.     By this Motion the Debtor seeks entry of an order (the "***Order***"), substantially in the form attached to this Motion as **Exhibit A**, authorizing the employment of HREC as a commercial real estate broker in this case for the purpose of acting as the Debtor's broker in connection with the offering for and consummating the sale of (i) that certain 47-unit development located at 8005 Cherokee Trail, Crossville, Tennessee 37863, which is commonly known as the

2

"Hiawatha Manor Resort" (the "***Hiawatha East Property***") and (ii) that certain 70-unit development located at 8007 Cherokee Trail, Crossville, Tennessee 37863, which is commonly known as the "Hiawatha Manor West at Lake Tansi Village" (the "***Hiawatha West Property***", together with Hiawatha East Property, collectively, the "***Properties***").

11.     The terms of HREC's employment are outlined in that certain Exclusive Listing Agreement, between HREC and the Debtor, a copy of which is attached hereto as **Exhibit B**.

12.     HREC has also been separately engaged by Hiawatha Manor West Association, Inc. ("***Hiawatha West***"), pursuant to a certain Exclusive Listing Agreement, between HREC and Hiawatha West, which is attached to this Motion as **Exhibit C**.

13.     HREC is nationally recognized company that assists companies with the process of selling commercial real estate.

14.     HREC is well qualified and the services it will perform are necessary for the administration of the Debtor's estate.

15.     HREC will submit a declaration prior to the hearing of this Motion stating it is disinterested within the meaning of 11 U.S.C. § 101(1) and that it holds no interest adverse to the estate, which declaration shall be in substantially in the form as attached hereto as **Exhibit D**.

16.     HREC will work with Crexi in connection with facilitating a successful marketing and sale process of the Properties while undertaking to supplement the services being provided by Crexi and avoiding duplication of efforts and services provided.

17.     If the Properties are sold by HREC, the Debtor will compensate HREC only upon application to and approval by this Court and the turnover of the proceeds to the Debtor by the HREC, in accordance with the provisions of Local Rule 6005-1. HREC shall make a separate application for reimbursement of any expenses.

3

<u>**NOTICE**</u>

18.     The Debtor has provided notice of this Motion either by electronic mail, facsimile, or United States First Class mail to: (i) the Office of the United States Trustee for the Middle District of Tennessee; (ii) the Defendants; and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

**WHEREFORE**, the Debtor respectfully submits that cause exists to grant the relief sought in this motion and request that this court enter orders granting the relief requested in the motion and such other and further relief as this court deems just and proper.

Dated: November 18, 2025                     Respectfully submitted,
          Nashville, Tennessee                  **HOLLAND & KNIGHT LLP**


                                                 _/s/ Blake D. Roth_
                                                 Blake D. Roth (Federal ID No. 2666808)
                                                 C. Scott Kunde (TN Bar No. 040218)
                                                 511 Union Street, Suite 2700
                                                 Nashville, TN 37219
                                                 Telephone: (615) 244-6380
                                                 Facsimile: (615) 244-6804
                                                 Email: Blake.Roth@hklaw.com
                                                        Scott.Kunde@hklaw.com


                                                 _Counsel for the Debtor and Debtor in Possession_

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc. | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

<u>**ORDER AUTHORIZING EMPLOYMENT OF BROKER**</u>

Upon consideration of the Motion[1]; and upon finding that this court has jurisdiction over the matters set forth in the Motion; and upon finding that venue is proper in this court; and upon finding that due and sufficient notice has been given and that no other or further notice need be given; and upon finding that the relief sought in the Motion is in the best interest of the Debtor, its creditors, and other parties in interest; and after due consideration and finding other sufficient cause for the relief sought in the Motion, it is hereby

1.     **ORDERED** that the Motion is GRANTED; and it is further

2.     **ORDERED** that all objections are OVERRULED to the extent not otherwise resolved or withdrawn; and it is further

---

[1] Capitalized terms used in this order and not otherwise defined shall have the meanings ascribed to them in the Motion.

3.     **ORDERED** that the Debtor is authorized to employ HREC as its commercial real estate broker in connection with the sale of the Properties; and it is further

4.     **ORDERED** that, notwithstanding any Bankruptcy Rule to the contrary, this order shall be immediately effective and enforceable upon its entry; and it is further

5.     **ORDERED** that this court shall retain jurisdiction over any and all matters arising out of or related to this order.

APPROVED FOR ENTRY:

**HOLLAND & KNIGHT LLP**

_/s/ Blake D. Roth_
Blake D. Roth (Federal ID No. 2666808)
C. Scott. Kunde (TN Bar No. 040218)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email:  Blake.Roth@hklaw.com
        Scott.Kunde@hklaw.com

_Counsel for the Debtor and_
_Debtor in Possession_

**Exhibit B**

**Hiawatha East Listing Agreement**

## HREC INVESTMENT ADVISORS
## EXCLUSIVE LISTING AGREEMENT

September 4, 2025

Archie Doby, President
Hiawatha Manor Association, Inc.
C/O Mr. Scott McGregor
Lemonjuice Solutions

Via Email – scott.macgregor@lemonjuice.biz

Re: Hiawatha Manor East (the "Property")

Dear Mr. Patel:

D & C Hospitality Investments LLC, a Colorado limited liability company, dba HREC Investment Advisors ("HREC IA"), is pleased to confirm the terms under which Hiawatha Manor Association, Inc. ("Seller") hereby engages HREC IA to provide the services described herein in connection with the sale of the Property in coordination (as to timing, specific instructions, etc.) with the ongoing bankruptcy process, as more particularly described and set forth in Exhibit "A" attached hereto and by this reference made a part hereof.

I.     SCOPE OF SERVICES

The Seller agrees to the engagement of HREC IA on the terms and subject to the conditions set forth in this letter agreement ("Agreement"). Accordingly, Seller hereby engages HREC IA as its agent to arrange a sale (the "Transaction") of Seller's interest in the Property. HREC IA acknowledges that Seller's objective is to obtain the best terms suitable for Seller in connection with the Transaction; and in order to achieve that objective, HREC IA shall perform services and have responsibilities as follows:

HREC INVESTMENT ADVISORS

1.  Determination of Marketing Strategy

HREC IA will evaluate and recommend to the Seller the appropriate marketing strategy for the Transaction. In determining our strategy, which is subject to the Sellers' approval, the overriding consideration will be to meet the Seller's transactional objectives. If requested, HREC IA will recommend the services of a national auction company who, subject to the approval of the bankruptcy court of the Middle District of Tennessee, will conduct the auction event. Of note, auction companies are typically compensated via a "buyer's premium" and, as such, are not directly compensated by the seller.

2.  Preparation of Marketing Presentation

HREC IA will prepare a comprehensive marketing presentation ("Offering Memorandum") that shall also be subject to the approval of the Seller. This Offering Memorandum will provide detailed information necessary for the analysis and evaluation of the Transaction. In addition to descriptive material, the Offering Memorandum may contain financial projections as well as an explanation of the terms and conditions under which a Transaction will be pursued.

3.  Creation and Implementation of Marketing Plan

During this phase of the engagement, representatives of HREC IA will identify qualified parties who are potentially interested in the Transaction. Such parties will be selected for their perceived interest in the acquisition of the Property and their ability to perform financially in the event of a Transaction. Each interested party will be required to sign a confidentiality agreement in a form approved by the Seller, after which, they will be able to access the Offering Memorandum from the digital data room. HREC IA will conduct follow-up discussions and on-site Property tours as needed.

4.  Preparation of Due Diligence Information

HREC IA will coordinate the preparation of appropriate/typical "due diligence" materials, which will be provided to qualified parties in addition to the Offering Memorandum. This information may include, but will not be limited to, such items as the most recent survey, geotechnical information (if available), the most recent Phase I report (if available), and a recent STR trend report based on the performance of like-kind hotels in the submarket, among other materials as deemed appropriate by HREC IA or the Seller. HREC IA shall

HREC INVESTMENT ADVISORS

arrange for the due diligence information approved by the Seller to be placed in a virtual data room accessible by qualified parties.

5. Communication with Seller During the Marketing Period

HREC shall keep the Seller informed of the progress of HREC's and marketing efforts through regular communication in the form of summary memos/emails and phone calls/meetings.

6. Contract Negotiations

In the event the Seller to complete the sale of the Property without also engaging the services of an auction company, HREC IA will assist the Seller in conducting all negotiations as requested by the Seller; provided, however, in no event shall HREC IA have the authority to make any commitments or representations, enter into any agreements or sign any documents on behalf of the Seller. All final terms and conditions of the Transaction will be subject to approval by the Seller in its sole discretion, and the Seller shall have the sole and absolute discretion to accept or reject any offer or to withdraw the Property or individual properties within the Property from the market at any time.

7. Transaction Closing

The final phase of HREC IA's involvement will be to assist the Seller in the coordination of activities required to consummate the Transaction. This will include assistance in the resolution of due diligence and business issues and assistance in the satisfaction of closing requirements.

Key members of the HREC IA listing team for purposes of implementing the obligations of HREC IA hereunder shall consist of Patrick Culligan/Principal (a licensed State of Tennessee Real Estate Broker, Paul Sexton/Managing Director and Tammy Bateman-Nilsen/Senior Vice President who shall assume primary responsibility for the team that will initiate all discussions with prospective purchasers on the part of HREC IA and shall be reasonably available to carry out the duties of HREC IA hereunder. Mr. Culligan, Mr. Sexton and/or Ms. Bateman-Nilsen may be replaced during the term in the event of death, incapacity or termination of employment with HREC IA provided that the replacement individual(s) have similar or greater experience than the replaced employee and provided that Seller consents to such replacement, which consent shall not be unreasonably withheld.

The Seller acknowledges, however, that HREC IA is not an expert in and is not responsible for any legal, regulatory, tax, accounting, engineering, environmental or other technical matters,

HREC INVESTMENT ADVISORS

all of which shall be solely Seller's responsibility; provided, however, HREC IA shall, based on its professional expertise, assist the Seller in connection with such matters, including giving Seller recommendations as to experts to use for such matters and coordinating the work of such experts with the other parties working on the Transaction, but in no event shall HREC IA have responsibility for the work of such experts.

II.      COOPERATION OF SELLER

Promptly after execution of this agreement, the Seller shall provide HREC IA with the names of all parties, if any, with whom the Seller has discussed the Transaction prior to the date hereof. The Seller shall likewise inform HREC IA of the dates and nature of all communications by the Seller with any prospective parties concerning the Transaction after the date hereof and shall refer all inquiries from such parties to HREC IA. The Seller shall also make available to HREC IA such documents, materials and information regarding the Property, which, in the reasonable professional judgment of HREC IA, are necessary or appropriate for the proper marketing of the Transaction. HREC IA shall have no liability with respect to the use of any data or information provided by third parties, so long as the Seller authorizes and provides written consent for the preparation of any such information so used by HREC IA in the Offering Memorandum. The Seller does not make any representation to HREC IA or any third party as to the accuracy or completeness of the information and documents provided by the Seller or third parties. The Seller may designate certain information as confidential, and HREC IA will so treat such information. HREC IA shall not provide any such information to third parties without the Seller's prior approval.

III.     COMPENSATION

As compensation for the services to be performed by HREC IA under this agreement, HREC IA shall be paid a transaction fee (the "Transaction Fee") in accordance with the terms of Exhibit "B" attached hereto and made a part hereof.

For purposes of calculating the Transaction Fee payable to HREC IA under this agreement, the term "Gross Proceeds" shall mean the total fair market value of the gross consideration (including without limitation, cash, notes, securities, property, obligations or mortgages assumed or taken subject to, and any other form of consideration including without limitation Seller conveying the Property or any part thereof into a new joint venture) to be received by the Seller in connection with the Transaction. Gross Proceeds shall include any portion of the purchase price placed in escrow or subject to a holdback as part of the Transaction but shall not be adjusted by any fees, prorations or closing expenses. The Transaction Fee will become due

HREC INVESTMENT ADVISORS

and payable by the Seller upon consummation of a Transaction, whether or not through the efforts of HREC IA, provided the Seller has entered into a letter of intent or definitive agreement for the Transaction during the term of this agreement.

In addition, if the Seller enters into a letter of intent or definitive agreement for a Transaction within six (6) months following the termination by the Seller of HREC IA's engagement under this agreement with one or more of the prospective parties presented by HREC IA while performing its services under this agreement or one or more of its affiliates and such Transaction subsequently closes, the Seller shall be obligated to pay HREC IA the Transaction Fee determined in accordance with the terms of this agreement upon the consummation of the Transaction. A complete list of such prospective parties shall be provided to the Seller within thirty (30) days following the effective date of the termination of this agreement.

For purposes of this agreement, the term "Transaction" shall include a direct or indirect transaction with respect to the Property or of the interests in any entity holding title to the Property, whether accomplished through a sale, merger, consolidation or otherwise; any direct or indirect transaction with respect to a partial ownership interest in the Property or joint venture or any combination thereof. In no event, however, shall a Transaction be deemed to have occurred if the Transaction does not close for any reason and in such case HREC IA shall not be entitled to any Transaction Fee.

Notwithstanding anything contained herein to the contrary, if a sale of the Property should not close for any reason whatsoever, including, without limitation, due to the Seller's willful default in any of its obligations under any contract that may be signed for the sale of such Property, HREC IA shall not be entitled to any compensation whatsoever except for the Marketing and Expense Retainer.

IV.   <u>TERMINATION</u>

The term of HREC IA's engagement by the Seller shall begin as of the date hereof and shall end on the earlier of (1) the date of the closing of the transaction as contemplated in this Agreement or (2) April 30, 2026.

Upon termination of this Agreement, neither party will have any liability or continuing obligation to the other, except that: (i) any provision of this Agreement concerning rights or obligations of the parties with respect to representations, reimbursement, indemnification, the return or delivery of documents and other property, and

HREC INVESTMENT ADVISORS

confidentiality shall survive such termination; (ii) the Seller shall remain liable for HREC IA's reasonable costs and expenses (capped at Marketing Retainer) incurred up to the time of such termination including administrative expenses; and (iii) HREC IA's right to payment of a Transaction Fee as defined in Section III above, if any, under this Agreement shall survive such termination.

The Seller may, by written notification to HREC IA, at any time in its sole discretion, remove the Property from the market, in which event, the Seller shall have no liability or obligation to pay any fee or commission to HREC IA except as provided in Article III (COMPENSATION).

VI.     INDEMNIFICATION

The Seller shall indemnify and hold harmless HREC IA, each person or entity deemed to control or to be controlled by HREC IA, and their respective partners, shareholders, directors, officers and employees, from and against any and all liability, damages, losses and expenses (including without limitation reasonable attorneys' fees) resulting from claims or causes of action or proceedings or investigations by a third party, relating to this engagement except such as may be imposed or incurred by reason of the negligence, willful misconduct, or fraud of HREC IA (or any of its employees or agents) in the performance of HREC IA's services and responsibilities hereunder and provided that HREC IA has acted within the scope of its authority described in this letter.

HREC IA shall indemnify and hold harmless the Seller, each person or entity deemed to control or to be controlled by the Seller, and their respective partners, shareholders, directors, officers and employees, from and against any and all liability, damages, losses and expenses (including without limitation reasonable attorneys' fees) resulting from claims or causes of action, or proceedings or investigations by a third party, relating to this engagement which may be imposed or incurred by reason of the negligence, wrongful act, wrongful failure to act, willful misconduct, fraud or misrepresentation of HREC IA (or any of its employees or agents).

VII.    GENERAL PROVISIONS

1.  Notices. Any notice or other communication required or desired to be given to any party under this agreement shall be in writing and shall be either: (a) delivered personally by

HREC INVESTMENT ADVISORS

hand; (b) sent by certified United States mail, return receipt requested; (c) sent by a nationally recognized overnight courier service; (d) sent by email or facsimile provided a copy of any facsimile notice is also sent by one of the other foregoing means. All notices to either party shall be delivered to the following address provided either party may change such address by delivering notice to the other party in accordance with the provisions of this paragraph:

Notice to HREC IA:

HREC Investment Advisors
6400 S. Fiddler's Green Circle
Suite 1730
Greenwood Village, CO 80111
Attn: Mike Cahill
Email: mcahill@hrec.com
Tel: 303-267-0057 ext. 101

Notice to Seller
Hiawatha Manor Association, Inc.
C/O Lemonjuice Solutions.
7380 W. Sand Lake Rd., Suite 130
Orlando, FL 32819
Email: scott.macgregor@lemonjuice.biz
Tel: (321) 754-1033

All notices shall be deemed given upon receipt or upon the date the party receiving such notice refuses such receipt.

2.    Confidentiality. The Seller and HREC IA have entered into that certain Confidentiality Agreement which shall continue in full force and effect and is hereby ratified and confirmed and incorporated herein by this specific reference.

3.    Announcements. HREC IA will not issue any press releases or announcements regarding the Transaction without the prior written approval of the Seller as to the contents thereof, which approval may be given or withheld in the Seller's sole and absolute discretion.

4.    Taxes. The Seller shall be responsible for all taxes due and payable on the Transaction Fee or any other payments hereunder, including any sales tax, value-added tax or gross receipts

HREC INVESTMENT ADVISORS

tax; provided, however, in no event shall the Seller be responsible for any net income, franchise or property tax assessed against HREC IA, all of which shall be the responsibility of HREC IA.

5. <u>Interest; Litigation Costs.</u> If any payment due hereunder is not paid within five (5) business days of the date when due, then such payment shall bear interest at the rate of one percent (1%) per month from the date due to the date paid. In the event there is any litigation between the Seller and HREC IA with respect to the subject matter of this agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and disbursements in such litigation from the other party

6. <u>Brokers; Cooperation</u>. Except as otherwise set forth in this agreement, HREC IA shall not be required to deal with any other brokers or finders unless they are representing another party to the Transaction and have agreed to be paid by such other party, and neither the Seller nor HREC IA shall have any obligations for such brokers or finders. Except as set forth in the immediately preceding sentence, each party represents and warrants to the other party that it has not and will not deal with any other brokers or finders who are or will be entitled to any compensation with respect to the Transaction; and each party agrees to indemnify the other party for its breach of such representation and warranty.

7. <u>Authority; Construction.</u> The Seller represents and warrants that, subject to the approval of the court, it has the authority to enter into this agreement and to perform its obligations hereunder. HREC IA represents and warrants that is duly authorized to enter into this agreement and perform its obligations hereunder. The agreement is intended to create an independent contractor relationship between HREC IA and the Seller, and nothing herein shall be construed as creating an employer/employee or partnership relationship between the parties.

8. <u>Complete Agreement.</u> This document (including any exhibits referred to herein and attached hereto, which are incorporated herein by reference) contains the entire agreement between the parties and supersedes any prior discussions, negotiations, representations, agreements, written or oral, between the parties hereto or any of their respective affiliates respecting the subject matter hereof. No alterations, additions, or other changes to this agreement shall be binding unless made in writing and signed by both parties to this agreement.

HREC INVESTMENT ADVISORS

9.     <u>Assignment; Successors.</u> Neither party shall assign their rights or obligations under this agreement, in whole or in part, or any payments due or to become due under this agreement without prior written consent of the other party (and any such attempted assignment or delegation shall be void); provided, however, either party may assign this agreement to an affiliate or to an entity which succeeds to all or substantially all of the business of the assignor, but no such assignment shall relieve the assignor of its obligations hereunder. Except as described in the preceding sentence, this agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective successors and assigns of the parties to this agreement.

10.     <u>Financings.</u> The Seller understands that HREC IA may be requested by potential purchasers to solicit offers from lenders for financing the purchase of the Property and that HREC IA may, in addition to its representation of the Seller hereunder, represent one or more prospective purchasers in obtaining such financing. The Seller consents to such services by HREC IA as long as HREC IA discloses any such potential relationship to the Seller; provided, however, the Seller shall not be obligated to pay any fees or commissions to HREC IA in connection with such financing.  As such, any mortgage brokerage fees to be paid by a purchaser shall be the sole responsibility of the purchaser.

12.     <u>Limited Liability.</u> In no event shall any partner, shareholder, director, officer, agent, servant, employee, representative or affiliate of either party have any personal liability in connection with this agreement. Except as set forth in Section VI above, neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this agreement, including, but not limited to, lost profits, even if such party has knowledge of the possibility of such damages; and in no event shall HREC IA's liability to the Seller exceed the fees paid to HREC IA pursuant to this agreement.

13.     <u>Counterparts; Electronic Copies</u>. This agreement may be executed in any number of separate counterparts and by facsimile signatures, each of which shall together be deemed an original, but the several counterparts shall together constitute one and the same instrument. In addition, the parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a copy of this agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of this agreement.

HREC INVESTMENT ADVISORS

14.    <u>Governing Law.</u> This agreement shall be governed by the law of the State of Tennessee, without regard to the conflicts of law principles of such state.

15.    <u>Disputes</u>. In the event a claim or controversy arises concerning the terms of this Agreement or in the event Seller fails to pay HREC IA all or any portion of the amounts agreed to be paid herein, the Seller and HREC IA hereby agree that such claim or controversy shall be settled by final, binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association (www.adr.org), which rules are incorporated herein by reference, provided, however, that all persons nominated to act as arbitrators of such claims or controversy shall be attorneys at law duly licensed to practice before the courts of the state where the arbitration is conducted.

Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof as a final judgment. Deposition may be taken and other discovery may be obtained during such arbitration proceeding to the same extent as authorized in civil judicial proceedings. HREC IA and/or the Seller shall have the right to recover from the losing party its reasonable attorneys' fees, costs and expenses if it is required to bring an action to collect its commission under this Agreement.

[SIGNATURE PAGE FOLLOWS]

HREC INVESTMENT ADVISORS

If the foregoing accurately reflects our agreement, please execute this agreement below and return it to the undersigned.

D&C HOSPITALITY INVESTMENTS LLC, dba HREC Investment Advisors

By: _____
Name: Patrick Culligan
Title: Principal
Tennessee Broker License No. 272453

By: _____
Name: Scott Stephens
Title: Senior Principal & COO

AGREED and ACCEPTED
this _25_ day of September 2025

HIAWATHA MANOR ASSOCIATION

By: _____
Name: Archie Doby
Title:   President

<u>EXHIBIT "A"</u> - DESCRIPTION OF PROPERTY

HREC INVESTMENT ADVISORS

## EXHIBIT "B" – TRANSACTION FEE

The Transaction Fee to be paid to HREC IA pursuant to Section III of this Agreement shall be in the amount of 2.5% of Gross Proceeds.

HREC INVESTMENT ADVISORS

**Exhibit C**

**Hiawatha West Listing Agreement**

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

**HREC INVESTMENT ADVISORS**
**EXCLUSIVE LISTING AGREEMENT**

October 10, 2025

Gordon Bentley, President
Hiawatha Manor West Association, Inc.
C/O Mr. Scott McGregor
Lemonjuice Solutions

Via Email – scott.macgregor@lemonjuice.biz

Re:  Hiawatha Manor East (the "Property")

Dear Mr. Patel:

D & C Hospitality Investments LLC, a Colorado limited liability company, dba HREC Investment Advisors ("HREC IA"), is pleased to confirm the terms under which Hiawatha Manor West Association, Inc. ("Seller") hereby engages HREC IA to provide the services described herein in connection with the sale of the Property in coordination (as to timing, specific instructions, etc.) with the ongoing bankruptcy process, as more particularly described and set forth in Exhibit "A" attached hereto and by this reference made a part hereof.

   I.    SCOPE OF SERVICES

The Seller agrees to the engagement of HREC IA on the terms and subject to the conditions set forth in this letter agreement ("Agreement"). Accordingly, Seller hereby engages HREC IA as its agent to arrange a sale (the "Transaction") of Seller's interest in the Property. HREC IA acknowledges that Seller's objective is to obtain the best terms suitable for Seller in connection with the Transaction; and in order to achieve that objective, HREC IA shall perform services and have responsibilities as follows:

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

1.  Determination of Marketing Strategy

HREC IA will evaluate and recommend to the Seller the appropriate marketing strategy for the Transaction. In determining our strategy, which is subject to the Sellers' approval, the overriding consideration will be to meet the Seller's transactional objectives. If requested, HREC IA will recommend the services of a national auction company who, subject to the approval of the bankruptcy court of the Middle District of Tennessee, will conduct the auction event. Of note, auction companies are typically compensated via a "buyer's premium" and, as such, are not directly compensated by the seller.

2.  Preparation of Marketing Presentation

HREC IA will prepare a comprehensive marketing presentation ("Offering Memorandum") that shall also be subject to the approval of the Seller. This Offering Memorandum will provide detailed information necessary for the analysis and evaluation of the Transaction. In addition to descriptive material, the Offering Memorandum may contain financial projections as well as an explanation of the terms and conditions under which a Transaction will be pursued.

3.  Creation and Implementation of Marketing Plan

During this phase of the engagement, representatives of HREC IA will identify qualified parties who are potentially interested in the Transaction. Such parties will be selected for their perceived interest in the acquisition of the Property and their ability to perform financially in the event of a Transaction. Each interested party will be required to sign a confidentiality agreement in a form approved by the Seller, after which, they will be able to access the Offering Memorandum from the digital data room. HREC IA will conduct follow-up discussions and on-site Property tours as needed.

4.  Preparation of Due Diligence Information

HREC IA will coordinate the preparation of appropriate/typical "due diligence" materials, which will be provided to qualified parties in addition to the Offering Memorandum. This information may include, but will not be limited to, such items as the most recent survey, geotechnical information (if available), the most recent Phase I report (if available), and a recent STR trend report based on the performance of like-kind hotels in the submarket,

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

among other materials as deemed appropriate by HREC IA or the Seller. HREC IA shall arrange for the due diligence information approved by the Seller to be placed in a virtual data room accessible by qualified parties.

5.      Communication with Seller During the Marketing Period

HREC shall keep the Seller informed of the progress of HREC's and marketing efforts through regular communication in the form of summary memos/emails and phone calls/meetings.

6.      Contract Negotiations

In the event the Seller to complete the sale of the Property without also engaging the services of an auction company, HREC IA will assist the Seller in conducting all negotiations as requested by the Seller; provided, however, in no event shall HREC IA have the authority to make any commitments or representations, enter into any agreements or sign any documents on behalf of the Seller. All final terms and conditions of the Transaction will be subject to approval by the Seller in its sole discretion, and the Seller shall have the sole and absolute discretion to accept or reject any offer or to withdraw the Property or individual properties within the Property from the market at any time.

7.      Transaction Closing

The final phase of HREC IA's involvement will be to assist the Seller in the coordination of activities required to consummate the Transaction. This will include assistance in the resolution of due diligence and business issues and assistance in the satisfaction of closing requirements.

Key members of the HREC IA listing team for purposes of implementing the obligations of HREC IA hereunder shall consist of Patrick Culligan/Principal (a licensed State of Tennessee Real Estate Broker, Paul Sexton/Managing Director and Tammy Bateman-Nilsen/Senior Vice President who shall assume primary responsibility for the team that will initiate all discussions with prospective purchasers on the part of HREC IA and shall be reasonably available to carry out the duties of HREC IA hereunder.  Mr. Culligan, Mr. Sexton and/or Ms. Bateman-Nilsen may be replaced during the term in the event of death, incapacity or termination of employment with HREC IA provided that the replacement individual(s) have similar or greater experience than the replaced employee and provided that Seller consents to such replacement, which consent shall not be unreasonably withheld.

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

The Seller acknowledges, however, that HREC IA is not an expert in and is not responsible for any legal, regulatory, tax, accounting, engineering, environmental or other technical matters, all of which shall be solely Seller's responsibility; provided, however, HREC IA shall, based on its professional expertise, assist the Seller in connection with such matters, including giving Seller recommendations as to experts to use for such matters and coordinating the work of such experts with the other parties working on the Transaction, but in no event shall HREC IA have responsibility for the work of such experts.

II.     <u>COOPERATION OF SELLER</u>

Promptly after execution of this agreement, the Seller shall provide HREC IA with the names of all parties, if any, with whom the Seller has discussed the Transaction prior to the date hereof. The Seller shall likewise inform HREC IA of the dates and nature of all communications by the Seller with any prospective parties concerning the Transaction after the date hereof and shall refer all inquiries from such parties to HREC IA. The Seller shall also make available to HREC IA such documents, materials and information regarding the Property, which, in the reasonable professional judgment of HREC IA, are necessary or appropriate for the proper marketing of the Transaction. HREC IA shall have no liability with respect to the use of any data or information provided by third parties, so long as the Seller authorizes and provides written consent for the preparation of any such information so used by HREC IA in the Offering Memorandum. The Seller does not make any representation to HREC IA or any third party as to the accuracy or completeness of the information and documents provided by the Seller or third parties. The Seller may designate certain information as confidential, and HREC IA will so treat such information. HREC IA shall not provide any such information to third parties without the Seller's prior approval.

III.    <u>COMPENSATION</u>

As compensation for the services to be performed by HREC IA under this agreement, HREC IA shall be paid a transaction fee (the "Transaction Fee") in accordance with the terms of Exhibit "B" attached hereto and made a part hereof.

For purposes of calculating the Transaction Fee payable to HREC IA under this agreement, the term "Gross Proceeds" shall mean the total fair market value of the gross consideration (including without limitation, cash, notes, securities, property, obligations or mortgages assumed or taken subject to, and any other form of consideration including without limitation Seller conveying the Property or any part thereof into a new joint venture) to be received by the Seller in connection with the Transaction. Gross Proceeds shall include any portion of the

HREC INVESTMENT ADVISORS

purchase price placed in escrow or subject to a holdback as part of the Transaction but shall not be adjusted by any fees, prorations or closing expenses. The Transaction Fee will become due and payable by the Seller upon consummation of a Transaction, whether or not through the efforts of HREC IA, provided the Seller has entered into a letter of intent or definitive agreement for the Transaction during the term of this agreement.

In addition, if the Seller enters into a letter of intent or definitive agreement for a Transaction within six (6) months following the termination by the Seller of HREC IA's engagement under this agreement with one or more of the prospective parties presented by HREC IA while performing its services under this agreement or one or more of its affiliates and such Transaction subsequently closes, the Seller shall be obligated to pay HREC IA the Transaction Fee determined in accordance with the terms of this agreement upon the consummation of the Transaction. A complete list of such prospective parties shall be provided to the Seller within thirty (30) days following the effective date of the termination of this agreement.

For purposes of this agreement, the term "Transaction" shall include a direct or indirect transaction with respect to the Property or of the interests in any entity holding title to the Property, whether accomplished through a sale, merger, consolidation or otherwise; any direct or indirect transaction with respect to a partial ownership interest in the Property or joint venture or any combination thereof. In no event, however, shall, a Transaction be deemed to have occurred if the Transaction does not close for any reason and in such case HREC IA shall not be entitled to any Transaction Fee.

Notwithstanding anything contained herein to the contrary, if a sale of the Property should not close for any reason whatsoever, including, without limitation, due to the Seller's willful default in any of its obligations under any contract that may be signed for the sale of such Property, HREC IA shall not be entitled to any compensation whatsoever except for the Marketing and Expense Retainer.

IV. <u>TERMINATION</u>

The term of HREC IA's engagement by the Seller shall begin as of the date hereof and shall end on the earlier of (1) the date of the closing of the transaction as contemplated in this Agreement or (2) April 30, 2026.

Upon termination of this Agreement, neither party will have any liability or continuing obligation to the other, except that: (i) any provision of this Agreement concerning rights

HREC INVESTMENT ADVISORS

or obligations of the parties with respect to representations, reimbursement, indemnification, the return or delivery of documents and other property, and confidentiality shall survive such termination; (ii) the Seller shall remain liable for HREC IA's reasonable costs and expenses (capped at Marketing Retainer) incurred up to the time of such termination including administrative expenses; and (iii) HREC IA's right to payment of a Transaction Fee as defined in Section III above, if any, under this Agreement shall survive such termination.

The Seller may, by written notification to HREC IA, at any time in its sole discretion, remove the Property from the market, in which event, the Seller shall have no liability or obligation to pay any fee or commission to HREC IA except as provided in Article III (COMPENSATION).

VI.     <u>INDEMNIFICATION</u>

The Seller shall indemnify and hold harmless HREC IA, each person or entity deemed to control or to be controlled by HREC IA, and their respective partners, shareholders, directors, officers and employees, from and against any and all liability, damages, losses and expenses (including without limitation reasonable attorneys' fees) resulting from claims or causes of action or proceedings or investigations by a third party, relating to this engagement except such as may be imposed or incurred by reason of the negligence, willful misconduct, or fraud of HREC IA (or any of its employees or agents) in the performance of HREC IA's services and responsibilities hereunder and provided that HREC IA has acted within the scope of its authority described in this letter.

HREC IA shall indemnify and hold harmless the Seller, each person or entity deemed to control or to be controlled by the Seller, and their respective partners, shareholders, directors, officers and employees, from and against any and all liability, damages, losses and expenses (including without limitation reasonable attorneys' fees) resulting from claims or causes of action, or proceedings or investigations by a third party, relating to this engagement which may be imposed or incurred by reason of the negligence, wrongful act, wrongful failure to act, willful misconduct, fraud or misrepresentation of HREC IA (or any of its employees or agents).

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

VII.     GENERAL PROVISIONS

1.   Notices. Any notice or other communication required or desired to be given to any party
     under this agreement shall be in writing and shall be either: (a) delivered personally by
     hand; (b) sent by certified United States mail, return receipt requested; (c) sent by a
     nationally recognized overnight courier service; (d) sent by email or facsimile provided
     a copy of any facsimile notice is also sent by one of the other foregoing means. All
     notices to either party shall be delivered to the following address provided either party
     may change such address by delivering notice to the other party in accordance with the
     provisions of this paragraph:

         Notice to HREC IA:

         HREC Investment Advisors
          6400 S. Fiddler's Green Circle
         Suite 1730
         Greenwood Village, CO 80111
         Attn: Mike Cahill
         Email:  mcahill@hrec.com
         Tel: 303-267-0057 ext. 101

         Notice to Seller
         Hiawatha Manor West Association, Inc.
         C/O Lemonjuice Solutions.
         7380 W. Sand Lake Rd., Suite 130
         Orlando, FL 32819
         Email: scott.macgregor@lemonjuice.biz
         Tel:  (321) 754-1033

   All notices shall be deemed given upon receipt or upon the date the party receiving such
   notice refuses such receipt.

2.   Confidentiality. The Seller and HREC IA have entered into that certain
   Confidentiality Agreement which shall continue in full force and effect and is hereby
   ratified and confirmed and incorporated herein by this specific reference.

3.   Announcements. HREC IA will not issue any press releases or announcements regarding
   the Transaction without the prior written approval of the Seller as to the contents thereof,
   which approval may be given or withheld in the Seller's sole and absolute discretion.

HREC INVESTMENT ADVISORS

4.      <u>Taxes.</u> The Seller shall be responsible for all taxes due and payable on the Transaction Fee or any other payments hereunder, including any sales tax, value-added tax or gross receipts tax; provided, however, in no event shall the Seller be responsible for any net income, franchise or property tax assessed against HREC IA, all of which shall be the responsibility of HREC IA.

5.      <u>Interest; Litigation Costs.</u> If any payment due hereunder is not paid within five (5) business days of the date when due, then such payment shall bear interest at the rate of one percent (1%) per month from the date due to the date paid. In the event there is any litigation between the Seller and HREC IA with respect to the subject matter of this agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and disbursements in such litigation from the other party

6.      <u>Brokers; Cooperation</u>. Except as otherwise set forth in this agreement, HREC IA shall not be required to deal with any other brokers or finders unless they are representing another party to the Transaction and have agreed to be paid by such other party, and neither the Seller nor HREC IA shall have any obligations for such brokers or finders. Except as set forth in the immediately preceding sentence, each party represents and warrants to the other party that it has not and will not deal with any other brokers or finders who are or will be entitled to any compensation with respect to the Transaction; and each party agrees to indemnify the other party for its breach of such representation and warranty.

7.      <u>Authority; Construction.</u> The Seller represents and warrants that, subject to the approval of the court, it has the authority to enter into this agreement and to perform its obligations hereunder. HREC IA represents and warrants that is duly authorized to enter into this agreement and perform its obligations hereunder. The agreement is intended to create an independent contractor relationship between HREC IA and the Seller, and nothing herein shall be construed as creating an employer/employee or partnership relationship between the parties.

8.      <u>Complete Agreement.</u> This document (including any exhibits referred to herein and attached hereto, which are incorporated herein by reference) contains the entire agreement between the parties and supersedes any prior discussions, negotiations, representations, agreements, written or oral, between the parties hereto or any of their respective affiliates respecting the subject matter hereof. No alterations, additions, or other changes to this agreement shall be binding unless made in writing and signed by both parties to this agreement.

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

9.     <u>Assignment; Successors.</u> Neither party shall assign their rights or obligations under this agreement, in whole or in part, or any payments due or to become due under this agreement without prior written consent of the other party (and any such attempted assignment or delegation shall be void); provided, however, either party may assign this agreement to an affiliate or to an entity which succeeds to all or substantially all of the business of the assignor, but no such assignment shall relieve the assignor of its obligations hereunder. Except as described in the preceding sentence, this agreement shall be binding upon, inure to the benefit of, and be enforceable by and against the respective successors and assigns of the parties to this agreement.

10.     <u>Financings.</u> The Seller understands that HREC IA may be requested by potential purchasers to solicit offers from lenders for financing the purchase of the Property and that HREC IA may, in addition to its representation of the Seller hereunder, represent one or more prospective purchasers in obtaining such financing. The Seller consents to such services by HREC IA as long as HREC IA discloses any such potential relationship to the Seller; provided, however, the Seller shall not be obligated to pay any fees or commissions to HREC IA in connection with such financing.  As such, any mortgage brokerage fees to be paid by a purchaser shall be the sole responsibility of the purchaser.

12.     <u>Limited Liability.</u> In no event shall any partner, shareholder, director, officer, agent, servant, employee, representative or affiliate of either party have any personal liability in connection with this agreement. Except as set forth in Section VI above, neither party shall be liable to the other for, and each party hereby waives any and all rights to claim against the other, any special, indirect, incidental, consequential, punitive or exemplary damages in connection with this agreement, including, but not limited to, lost profits, even if such party has knowledge of the possibility of such damages; and in no event shall HREC IA's liability to the Seller exceed the fees paid to HREC IA pursuant to this agreement.

13.     <u>Counterparts; Electronic Copies</u>. This agreement may be executed in any number of separate counterparts and by facsimile signatures, each of which shall together be deemed an original, but the several counterparts shall together constitute one and the same instrument. In addition, the parties agree that (i) an electronic signature shall be considered an original signature, and (ii) a copy of this agreement shall be considered an original instrument, and each, together or separately, shall become binding and enforceable as if original and the parties may rely on the same to prove the authenticity of this agreement.

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

14.     <u>Governing Law.</u> This agreement shall be governed by the law of the State of Tennessee, without regard to the conflicts of law principles of such state.

15.     <u>Disputes</u>. In the event a claim or controversy arises concerning the terms of this Agreement or in the event Seller fails to pay HREC IA all or any portion of the amounts agreed to be paid herein, the Seller and HREC IA hereby agree that such claim or controversy shall be settled by final, binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association (www.adr.org), which rules are incorporated herein by reference, provided, however, that all persons nominated to act as arbitrators of such claims or controversy shall be attorneys at law duly licensed to practice before the courts of the state where the arbitration is conducted.

Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof as a final judgment. Deposition may be taken and other discovery may be obtained during such arbitration proceeding to the same extent as authorized in civil judicial proceedings. HREC IA and/or the Seller shall have the right to recover from the losing party its reasonable attorneys' fees, costs and expenses if it is required to bring an action to collect its commission under this Agreement.

[SIGNATURE PAGE FOLLOWS]

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

If the foregoing accurately reflects our agreement, please execute this agreement below and return it to the undersigned.

D&C HOSPITALITY INVESTMENTS LLC, dba HREC Investment Advisors

By: *Patrick Culligan*
Name: Patrick Culligan
Title: Principal
Tennessee Broker License No. 272453

By: *Scott Stephens*
Name: Scott Stephens
Title: Senior Principal & COO

AGREED and ACCEPTED
this 10 day of October 2025

HIAWATHA MANOR WEST ASSOCIATION

By: *Gordon Bentley*
Name: Gordon Bentley
Title:   President

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

<u>EXHIBIT "A"</u>  - DESCRIPTION OF PROPERTY

HREC INVESTMENT ADVISORS

Docusign Envelope ID: 13CC3F7E-B373-4611-8422-496693A7D000

## EXHIBIT "B" – TRANSACTION FEE

The Transaction Fee to be paid to HREC IA pursuant to Section III of this Agreement shall be in the amount of 2.5% of Gross Proceeds.

HREC INVESTMENT ADVISORS

**Exhibit D**

**HREC Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc. | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

## UNSWORN DECLARATION

I, [_____], hereby verify, under penalty of perjury under the laws of the United States of America, that I am [job title of affiant] with D&C Hospitality Investments, LLC, a Colorado limited liability company, d/b/a HREC Investment Advisors ("***HREC***"), located at [_____] and that neither I, nor any other employee or agents of HREC have any interest adverse to the bankruptcy estate in connection with this proceeding, and that neither I nor any employees or agents have any connection with the Debtor, the creditors, or any other party in interest, their respective attorneys or accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

Executed on: [_____], 2025

_____

[_____]