# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc. | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

**DEBTOR'S MOTION PURSUANT TO 11 U.S.C.§§ 105(a), 363, AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 FOR AN ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION FOR AND A HEARING TO APPROVE THE SALE OF THE PROPERTIES, (III) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR THE AUCTION AND FOR A HEARING TO APPROVE THE SALES (IV) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (V) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND (VI) GRANTING RELATED RELIEF**

Hiawatha Manor Association, Inc. (the "***Debtor***"), by and through its undersigned counsel, files this motion (this "***Motion***") pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 6004-1, 6005-1, and 9013-1 of the Local Court Rules of the United States Bankruptcy Court for the Middle District of Tennessee (the "***Local Rules***"), for entry of an order, substantially in the form attached to this Motion as __**Exhibit A**__ (the "***Proposed Order***") (i) authorizing and approving bidding procedures in connection with the sales or dispositions (each a "***Sale***", and collectively, the "***Sales***") of the Properties (as defined below) free and clear of all claims, liens, liabilities, rights, interests, and encumbrances substantially in the form attached to this Motion as __**Exhibit B**__, (ii) scheduling the auction (the "***Auction***") for, and a hearing to approve, the Sales, (iii) authorizing and approving the form and manner of notice of the respective date, time, and place for the Auction and a

hearing to approve the Sales substantially in the form attached to this Motion as **Exhibit C**, (iv) authorizing and approving the procedures for the assumption and assignment of certain executory contracts and the form of notice thereof substantially in the form attached to this Motion as **Exhibit D**, and (v) granting related relief. In support of the motion, the Debtor relies on and incorporates by reference the Declaration of Archie Dolby and, respectfully, states as follows:

PRELIMINARY STATEMENT

1.      The Debtor seeks authority to sell (i) a certain 47-unit (each a "***Unit***" and collectively, the "***Units***") development located at 8005 Cherokee Trail, Crossville, Tennessee 37863, which is commonly known as the "Hiawatha Manor Resort" ("***Hiawatha East Property***") and (ii) a certain 70-unit development located at 8007 Cherokee Trail, Crossville, Tennessee 37863, which is commonly known as the "Hiawatha Manor West" ("***Hiawatha West Property***," and together with Hiawatha East Property, the "***Properties***"), each free and clear of all liens, claims, interests, and encumbrances.

2.      Because the Debtor owns the Properties as a tenant in common (as detailed below), the Debtor has filed complaints commencing adversary proceedings (Adv. Pro. No. 2:25-ap-90051 and Adv. Pro. No. 2:25-ap-90052) (the "***Adversary Proceedings***") in which the Debtor is seeking authority, pursuant to section 363(h) of the Bankruptcy Code, to sell the Properties, including the interests held by non-debtors as tenants in common.

3.      This Motion supplements the relief requested in the Adversary Proceedings, by seeking approval of the sale of the Properties free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) and (h) of the Bankruptcy Code, and to permit the payment of certain costs and expenses related to the sale pursuant to section 363(j) of the Bankruptcy Code.

2

4.      On May 6, 2025 (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      On the Petition Date, the Debtor filed two complaints initiating the Adversary Proceedings in which it seeks authority to sell the Properties, including the interests of all tenants in common, pursuant to section 363(h) of the Bankruptcy Code.

6.      Upon consummation of the sale contemplated by this Motion and the Adversary Proceedings, the Debtor intends to file a plan of liquidation proposing to distribute the net sales proceeds to the defendants in the Adversary Proceedings (the "***Defendants***") and other creditors in accordance with the Bankruptcy Code, after payment of administrative claims, taxes, secured debts, and other obligations.

**A.      Original Ownership of the Properties.**

7.      The Debtor is a Tennessee not-for-profit corporation that holds and administers timeshare interests of the Hiawatha East Property.

8.      The Debtor also holds seventy (70) timeshare interests in the Hiawatha West Property.

9.      The Debtor's "sister" association, Hiawatha Manor West Association, Inc. ("***Hiawatha West***"), is a Tennessee not-for-profit corporation that holds and administers timeshare interests in real property known as "Hiawatha Manor West at Lake Tansi Village," located in or around 8007 Cherokee Trail, Crossville, Tennessee 38572. The property was initially organized under Tennessee's Horizontal Property Act by a Declaration of Horizontal Property Regime and Master Deed recorded on or about August 3, 1982.

10.      The Hiawatha East Property was initially organized under Tennessee's Horizontal Property Act by a Declaration recorded on or about July 1, 1979, followed by an additional

3

Declaration for "Hiawatha Manor I" recorded on or about October 27, 1980 (collectively, the "***Declarations***").

11.     The Declarations were amended multiple times to clarify and expand the rights and obligations of timeshare owners, most recently by a "Fourth Amendment of the Declaration of Horizontal Property Regime and Master Deed for Hiawatha Manor I," dated December 29, 2020. Together, these instruments authorized up to 88 condominium units—each subdivisible into weekly intervals—and established the Debtor's authority to collect maintenance fees, enforce lien rights, set rules for owner voting, and manage the Property's common elements.

12.     Although the Declarations reference 88 condominium units, multiple buildings—A, F, G, H, I, and J—no longer physically exist. Only 41 units remain occupiable. The removed buildings continue to appear in the recorded documents as if they were intact, complicating any calculation of the supermajority required for amendments or termination. Their nominal existence inflates the total number of intervals and votes, making it nearly impossible to secure the threshold typically required under the Declarations.

**B.      Management of the Properties.**

13.     On or about March 24, 2018, the Debtor—together with Hiawatha West—engaged Crown Resorts Management LLC ("***Crown***") to manage the Properties. During its tenure, Crown held numerous intervals on which it failed to remit maintenance fees, thereby aggravating the Debtor's revenue shortfalls. Although Crown eventually deeded these intervals back to the Debtor, its prolonged nonpayment period contributed significantly to the Debtor's financial distress.

14.     On February 28, 2024, the Debtor replaced Crown with HPP Property Services, LLC d/b/a Lemonjuice Solutions ("***Lemonjuice***"), executing a Management and Repositioning Services Agreement. Effective that same date, Lemonjuice assumed management duties at the

4

Hiawatha East Property and began examining title status, delinquency levels, and budget deficiencies, with a mandate to identify a strategy—whether reorganization, termination of the timeshare structure, or outright sale—to restore financial stability and address the Hiawatha East Property's deteriorating operations.

15.     On September 27, 2024, Crown unexpectedly ceased operations and laid off staff at Hiawatha West, forcing the association to suspend on-site services. The abrupt closure also left existing long-term renters without proper oversight and created immediate challenges in meeting overdue utility charges and property insurance obligations.

16.     In August 2024, the Board of Hiawatha West followed Debtor's course of action and retained Lemonjuice to evaluate the property's financial viability and identify a path to stability. Lemonjuice began reviewing unpaid maintenance accounts, reconciling intervals abandoned by owners, and examining options for reorganization, termination of the timeshare structure, or a potential sale.

17.     The Debtor and Hiawatha West maintain a Shared Services Agreement, effective through April 1, 2025 (the "***Shared Services Agreement***"). The Shared Services Agreement called for Hiawatha West to provide spa and laundry facilities to the Hiawatha East Property for a yearly fee, while also agreeing to transfer seventy (70) of Hiawatha West's timeshare intervals—one in each of its units—to the Debtor.

**C.      Financial difficulty resulted in seeking restructuring options for the Properties.**

18.     From 1979 onwards, the Debtor sold thousands of "intervals" or "weeks" in these units, but owner delinquencies have climbed to approximately 75%, leading to severe shortfalls in assessment collections and a resulting lack of funds for maintenance. Many owners have simply abandoned their interests, leaving the Debtor unable to sustain normal resort operations and capital improvements.

5

19.     Similar to its sister association, Hiawatha West has also suffered from escalating owner delinquencies. As more owners abandoned their intervals or ceased paying maintenance fees, the association's income declined sharply, undermining its ability to cover regular operating costs, necessary repairs, and capital improvements.

20.     Additionally, although still in place, the Shared Services Agreement has become increasingly difficult to administer due to ongoing delinquencies, unpaid cross-charges, and the operational shutdown at Hiawatha West.

**D.     Termination of interval ownership at the Properties.**

21.     On March 10, 2025, the Debtor convened a special meeting of owners (the "***Special Meeting***") to propose an early termination of the timeshare plans. Notices were sent to all owners of record, explaining that the Properties remained unviable and that the Debtor sought a vote to terminate. Under the current Declarations, an early termination requires unanimous consent or a successful amendment to reduce that requirement. Nonetheless, the Debtor hoped that owners could meet the existing threshold or at least begin the process of amending the termination provision.

22.     Like the Debtor, Hiawatha West also faces restrictive voting requirements under its declaration. Early termination or significant amendment typically requires a unanimous or supermajority vote, yet the large volume of abandoned intervals and the limitations on the association's voting rights in reacquired intervals effectively bar any voluntary resolution.

23.     Despite the Debtor's efforts, the owners did not achieve the necessary unanimous, or supermajority, vote at the Special Meeting. The high proportion of abandoned intervals, issues with buildings that no longer physically exist, and the prohibition on the Debtor voting its own intervals all undermined any practical route to obtaining the Declarations' rigid termination standard. Consequently, the Debtor was left without a definitive vote to end the timeshare plans.

6

24. Because the Declarations' default requirement is unanimous consent for an early termination—calculated against a total that still includes nominally existing but demolished units—any standard membership vote remains effectively impossible. The Debtor's Board and Lemonjuice concluded that relying solely on association voting procedures (i.e., the currently prescribed unanimous threshold) would never yield an enforceable termination short of the built-in 2029 sunset or a further amendment to reduce the required vote.

25. The Debtor thus believes, absent a judicial determination, no practical mechanism exists to extinguish all timeshare intervals and unite the Properties for a sale. A state-law partition action would be prohibitively complicated, given the thousands of interval deeds and the fact that many units listed on record no longer physically exist.

26. Therefore, the Debtor has sought through the Adversary Proceedings authority under 11 U.S.C. § 363(h) to sell both its own interests and the co-owners' interests in one comprehensive transaction.

**E.      Assumption and Assignment of executory contracts and unexpired leases.**

27. The Debtor is seeking to assume and assign certain executory contracts and/or unexpired leases in connection with the Sales. Section 365 of the Bankruptcy Code authorizes the proposed assumptions, provided that any defaults are cured. Per the Assignment Procedures (defined below), the Debtor will determine if it is current on all amounts owing on the respective contracts and provide notice of same to the Non-Debtor Counterparties (defined below).

28. The Debtor will be assuming and assigning the Assigned Contracts (defined below) to the Successful Bidder(s) (defined below), who will have been selected due to its financial condition and ability to consummate the sale.

**RELIEF REQUESTED**

29. By this Motion, the Debtor seeks: (a) authorization and approval of the bidding

7

procedures, substantially in the form attached to this Motion as **Exhibit B** (the "*Bidding Procedures*"), in connection with the Sale of each Property to a purchaser free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code; (b) approval of the form and manner of the Notice of Sales, Auction and Sales Hearing, substantially in the form attached to this Motion as **Exhibit C**; and (c) authority and approval of procedures for the assumption and assignment of certain executory contracts and unexpired leases, if any, in connection with each Sale.

### A. **Bidding Procedures.**

30.     The Bidding Procedures are intended to: (a) permit a fair and efficient competitive sale process; and (b) promptly identify the bid or bids that constitute the highest and otherwise best offer for the subject Assets (the "*Successful Bids*," and each a "*Successful Bid*," and the maker of the Successful Bids, the "*Successful Bidders*," and each a "*Successful Bidder*").

31.     The Bidding Procedures establish, among other things:

    a.  the requirements a Potential Bidder must satisfy to be entitled to participate in the bidding process and become a Qualified Bidder;

    b.  the requirements for submitting bids and the method and criteria by which such bids become entitled to be a Qualified Bid;

    c.  the availability of, access to, and conduct during due diligence by Potential Bidders;

    d.  the deadline by which bids must be submitted;

    e.  the procedures for conducting the Auction;

    f.  the criteria by which a Successful Bidder will be selected by the Debtor; and

    g.  various other matters relating to the sale process generally, the Sale Hearing, return of any Good Faith Deposits, and designation of Next-Highest Bidders.

8

32.     The Bidding Procedures allow the Debtor and Potential Bidders to craft a sale that will obtain the highest and otherwise best value for the estate and its stakeholders.

33.     Pursuant to the Bidding Procedures, the Debtor may aggregate separate bids from unaffiliated persons to create one "Qualified Bid," including at the Auction, with respect to bids for separate portions of the Properties, to determine the highest and otherwise best Qualified Bid(s); provided that all Qualified Bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

34.     The Debtor reserves the right, at its discretion in connection with a Successful Bid, to seek approval and/or consummation of a Sale or restructuring pursuant to a Chapter 11 plan of reorganization with respect to the Properties.

**B.      Notice Procedures for the Sale, Auction and Sale Hearing.**

35.     The Debtor requests approval of the Notice of Auction and Sale Hearing, substantially in the form attached to the Bidding Procedures as **Exhibit B**. Within five (5) business days of entry of the Bidding Procedures Order, the Debtor will serve the Notice of Auction and Sale Hearing by first-class mail upon: (a) the Office of the United States Trustee for the Middle District of Tennessee; (b) holders of the twenty (20) largest unsecured claims against the Debtor; (c) the attorney general for the State of Tennessee; (d) all known taxing authorities for the jurisdictions to which the Debtor is subject; (e) all environmental authorities having jurisdiction over the Properties; (f) all state, local or federal agencies, having jurisdiction over any aspect of the Debtor's business operations; (g) all entities known or reasonably believed to have asserted a lien on any of the Properties; (h) counterparties to the Debtor's executory contracts and unexpired leases; (i) all persons that have expressed to the Debtor in interest in a transaction with respect to the Properties during the past six (6) months; (j) all of the Debtor's other known creditors and equity security holders; and

9

(k) those parties who have formally filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 at the time of service.

36.     As soon as reasonably practicable following conclusion of the Auction (or the Bid Deadline, if only one Qualified Bid is received), the Debtor shall file a notice on the Court's docket identifying the Successful Bidder(s) for the Properties and any applicable Next-Highest Bidder(s).

## C.     Assumption and Assignment Procedures

37.     To facilitate the Sales, the Debtor seeks authority to assume and assign to the Successful Bidder(s) certain executory contracts and unexpired leases as selected by such Successful Bidder(s) in its Successful Bid(s) (the "***Assigned Contracts***") in accordance with the procedures described below (the "***Assignment Procedures***").

38.     The proposed Assignment Procedures are as follows:

a.  At least thirty (30) days before the hearing to approve a Sale, the Debtor shall file with the Court and serve on each non-debtor counterparty (each a "***Non-Debtor Counterparty***") to each of the Debtor's executory contracts and unexpired leases (each a "***Contract***") the Potential Assumption and Assignment Notice. In the event that the Debtor identifies any Non-Debtor Counterparties which were not served with the Potential Assumption and Assignment Notice, the Debtor may subsequently serve such Non-Debtor Counterparty with a Potential Assumption and Assignment Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; provided, however, that the Cure Cost/Assignment Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Central Time) on the date that is fourteen (14) days following service of the Potential Assumption and Assignment Notice.

b.  The Potential Assumption and Assignment Notice served on each Non- Debtor Counterparty shall (i) identify each Contract; (ii) list the proposed calculation of the cure amounts that the Debtor believes must be paid under section 365(b)(1) of the Bankruptcy Code to cure all defaults outstanding under the Contract as of such date (the "***Cure Costs***"); (iii) include a statement that assumption and assignment of such Contract is not required or guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Cost/Assignment Objections (defined below) by the Cure Cost/Assignment Objection Deadline (defined below). Service of a Potential Assumption and Assignment Notice does

10

not constitute an admission that a particular Contract is an executory contract or unexpired lease of property, or confirm that the Debtor is required to assume and/or assign such Contract.

c. Objections (a "*Cure Cost/Assignment Objection*"), if any, to (i) the scheduled Cure Costs, and/or (ii) the potential assumption, assignment and/or transfer of such Contract, must (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Costs in dispute and (z) be filed with the Court and properly served on the Notice Parties (as defined in the Bidding Procedures Order) so as to be received no later than 4:00 p.m. (prevailing Central Time) on February 19, 2026 (the "*Cure Cost/Assignment Objection Deadline*"), subject to the proviso in subparagraph (a) above.

d. Objections (a "*Post-Auction Objection*") of any Non-Debtor Counterparty related solely to the specific identity of and adequate assurance of future performance provided by the Successful Bidder(s) with respect to the applicable Assumed Contract or Assumed Lease must (x) be in writing; (y) state with specificity the nature of such objection, and (z) be filed with the Court and properly served on the Notice Parties so as to be received no later than 4:00 a.m. (prevailing Central Time) on March 3, 2026 (the "*Post-Auction Objection Deadline*"), subject to the proviso in subparagraph (a) above.

e. Any Non-Debtor Counterparty to a Contract who fails to timely file and properly serve a Cure Cost/Assignment Objection or Post-Auction Objection as provided herein will (i) be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtor and the Debtor shall be entitled to rely solely upon the Cure Costs, and (ii) be deemed to have consented to the assumption, assignment and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the relevant Successful Bidder(s) and shall be forever barred and estopped from asserting or claiming against the Debtor or such Successful Bidder that any additional amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, or that any related right or benefit under such Contract cannot or will not be available to the relevant Successful Bidder. If a Cure Cost/Assignment Objection is timely filed and properly served, the Resolution Procedures (as defined below) will apply.

f. If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these Assignment Procedures, the Debtor and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Court intervention (the "*Resolution Procedures*"). If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following paragraph.

11

g. Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to all Contracts, if any, will be held at the Sale Hearing, provided, however, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection and (ii) the Debtor may adjourn a Cure Cost/Assignment Objection in their discretion.

h. A timely filed and properly served Cure Cost/Assignment Objection or Post-Auction Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

i. The Debtor's assumption and/or assignment of a Contract is subject to approval by the Court and consummation of the Sale. Absent consummation of the applicable Sale and entry of a Sale Order approving the assumption and/or assignment of the Contracts, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor. Contracts may be designated or de-designated for assumption and assignment at any time prior to the consummation of the Sale.

## ARGUMENT

**A.      The Bidding Procedures are appropriate and in the best interests of the Debtor, its estate, and creditors.**

39.      When performing an asset sale, the Debtor's "main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *See In re Parcliffe Dev.*, 2025 Bankr. LEXIS 171, 19 (Bankr. N.D. Ohio 2025) (citing *In re Mountain States Rosen, LLC*, 619 B.R. 750, 754 (Bankr. D. Wyo. 2020)).

40.      As such, the paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *In re Parcliffe Dev.*, 2025 Bankr. LEXIS at 19 (citing *In re Family Christian, LLC*, 533 B.R. 600, 621 (Bankr. W.D. Mich. 2015)); *See also In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting that the debtor in possession "had a fiduciary duty to protect and maximize the estate's assets").

41.      Bankruptcy courts "ha[ve] considerable discretion in approving assets sales and [are] granted ample latitude to strike a balance between fairness, finality, integrity, and

maximization of assets." *In re Parkcliffe Dev.*, 2025 Bankr. LEXIS at 16 (citing *In re Farmland Ind., Inc.*, 289 B.R. 122, 126 (8th Cir. BAP 2003)).

42.     The Debtor believes that the Bidding Procedures will provide an orderly and uniform mechanism by which interested buyers can submit offers for the Properties and will ensure a competitive and fair bidding process. The Bidding Procedures will allow the Debtor to conduct the Auction, subject to the terms of the Bidding Procedures, in a controlled, fair and open manner that will encourage participation by financially capable bidders that demonstrate the ability to close a transaction.

43.     The Bidding Procedures provide that in the event the Debtor determines, after consultation with its advisors, that any particular bids are not for a fair and adequate price or the acceptance of such bids would not be in the best interests of the estate or the Auction, such bids shall not be "Qualified Bids" entitled to participation at the Auction. As provided in the Bidding Procedures, the Debtor and its estate reserves the right to modify the Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth in the Bidding Procedures, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn, postpone or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

44.     If the Debtor receives more than one Qualified Bid for the Properties, and the Auction is held for those Properties, bidding shall commence at the amount of the highest and otherwise best bid received for the relevant Property, which determination will be communicated to Qualified Bidders prior to the commencement of the Auction, and the relevant

13

Qualified Bidders may submit successive bids in higher increments in accordance with the Bidding Procedures.

**B.      The notice procedures for the Sales, Bidding Procedures, Auction and Sale Hearing are reasonable and appropriate.**

45.     Pursuant to Bankruptcy Rules 2002(a) and (c), the Debtor is required to notify creditors of the Sales, including a disclosure of the time and place of any auction, the terms and conditions of the sale, and the deadline for filing any objections. The Debtor submits that the notice procedures described above fully comply with Bankruptcy Rule 2002 and are reasonably calculated to provide timely and adequate notice of the Sales, Bidding Procedures, Auction, and Sale Hearing to the Debtor's creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Properties.

46.     Accordingly, the Debtor respectfully requests that the Court approve the notice procedures set forth in this Motion, including the form and manner of service and publication of the Notice of Auction and Sale Hearing, and that no other or further notice of the Sales, Bidding Procedures, Auction or Sale Hearing is necessary or required.

**C.      The proposed Sale should be authorized under sections 105(a) and 363(b).**

47.     The Debtor respectfully submits that any sale consummated according to the Bidding Procedures would meet the standard set forth in section 363(b) for sales outside of the ordinary course of a debtor's business, because the terms of the sale will be fair and reasonable, and the Bidding Procedures and Auction will maximize the value of the Properties for the benefit of the Debtor's estate.

48.     Pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtor is authorized to sell property of the estate outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Court's power under section 363 of the Bankruptcy Code is supplemented by section 105(a) of

14

the Bankruptcy Code, which provides in relevant part that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a).

49.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by public auction. FED. R. BANKR. P. 6004(f)(1).

50.     A debtor should be authorized to sell assets out of the ordinary course of business pursuant to section 363 of the Bankruptcy Code and prior to obtaining a confirmed plan of reorganization if it demonstrates (1) a sound business purpose for doing so, (2) adequate and reasonable notice of the sale was provided to interested parties; (3) the sale has been proposed in good faith; and (4) the purchase price is fair and reasonable. *In re Barnhill's Buffet Inc.*, 2008 Bankr. LEXIS 2675, 5-6 (M.D. Tenn. 2008).

51.     When a sound business justification exists for a proposed transaction, authorization of a sale under section 363 of the Bankruptcy Code is appropriate. *In re Sumner Reg'l Health Sys.*, 201 Bankr. LEXIS 1972, 4 (M.D. Tenn 2010); *See also In re New Era Resorts, LLC*, 238 B.R. 381, 387 (Bankr. E.D. Tenn. 1999) ("court has broad discretion in determining whether to approve a sale other than in the ordinary course of business").

52.     Once the Debtor articulates a valid business justification, its decision to sell property out of the ordinary course of business enjoys a strong presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Great Lakes Comnet, Inc.*, 586 B.R. 718, 725 (W.D. Mich. 2018) (citing *F5 Capital v. Pappas*, 856 F.3d 61, 87 (2d Cir. 2017)). Therefore, any party objecting to a debtor's proposed asset sale must make a

showing that the directors "breached their fiduciary duty of care or of loyalty or acted in bad faith" as courts are loath to interfere with corporate decisions absent such a showing. *Id*.

53.     Here, the Properties consist of real estate, which has been continuously marketed in an open and free market.

54.     Any Successful Bidder would be entering into the proposed sale after an arms' length negotiations.

55.     The Sale contract will be a basic and customary form for use in the sale of real property and which the Debtor believes is fair to both the Debtor and Successful Bidder.

56.     Based upon the foregoing, the Debtor submits it has demonstrated sound business justifications for pursuing a private sale of the Properties and believes that a private sale of the Properties will allow for the greatest possible consideration for the Properties.

**D.      The proposed Sale should be free and clear, pursuant to section 363(f).**

57.     The proposed sale should be free and clear, with any lien, claim, interest or encumbrance in or on the Properties attaching to the proceeds of the proposed sale.

58.     Under section 363(f) of the Bankruptcy Code, a debtor in possession may sell property free and clear of any lien, claim, interest, or encumbrance in such property if, among other things:

(a) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(b) such entity consents;

(c) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(d) such interest is in bona fide dispute; or

(e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

16

11 U.S.C. § 363(f).

59.     Because section 363(f) is stated in the disjunctive, satisfaction of any one of its

five requirements will suffice to warrant approval of the proposed sale. *See In re Sumner Reg'l*

*Health Sys.*, 201 Bankr. LEXIS 1972, 5 ("The requirements of 11 U.S.C. § 363(f) are in the

disjunctive. The sale can be approved if any one of the five factors are present.").

60.     The Properties are not encumbered by any liens of significant value. Except for

any unpaid ad valorem taxes that may exist, the only other known parties holding liens on the

Properties are the Debtor. The Purchase Price must be greater than the aggregate value of all

liens on the Properties. As such, the Properties should be authorized to be sold free and clear of

such encumbrances pursuant to section 363(f)(3). *See* 11 U.S.C. § 363(f)(3).

61.     Based upon the foregoing, the Debtor submits that this Court may and should

approve the Sales at the Sale Hearing, free and clear any of any lien, claim, interest or

encumbrance in or on the Properties, with such liens, claims, interests, or encumbrances

attaching to the proceeds of the sale.

**E.      The Successful Bidder will be a good faith purchaser, pursuant to section 363(m).**

62.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection
> (b) or (c) of this section of a sale or lease of property does not affect the
> validity of a sale or lease under such authorization to an entity that purchased
> or leased such property in good faith, whether or not such entity knew of the
> pendency of the appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

63.     Section 363(m) "reflects the . . . 'policy of affording finality to judgments

approving sales in bankruptcy'" and that Section 363(m) "codifies Congress's strong preference

for finality and efficiency in the bankruptcy context, particularly where third parties are

involved." *In re Nashville Senior Living, LLC*, 407 B.R. 222, 230 (B.A.P. 6th Cir. 2009). *See*

17

*also United States v. Salerno*, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings"). Thus, if a buyer purchases assets in good faith, section 363(m) of the Bankruptcy Code protects the buyer from the risk that it will lose its interest in the purchased assets if the order approving the sale is reversed on appeal. *In re Nashville Senior Living, LLC*, 407 B.R. at 227.

64. While the Bankruptcy Code does not define "good faith," some courts have held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *In re Human Hous. Henrietta Hyatt, LLC,* 2025 Bankr. LEXIS 87, 35 (B.A.P. 6th Cir. 2025) (quoting *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005)).

65. The good faith status of a purchaser can be destroyed with evidence "that there was fraud or collusion between the purchaser and the seller or the other bidders, or that the purchaser's actions constituted an attempt to take grossly unfair advantage of other bidders." *Id.* at 85 (quoting *In re 255 Park Plaza*, 100 F.3d 1214, 1218 (6th Cir. 1996)).

66. The Debtor submits, and the testimony and evidence presented at the Sale hearing will demonstrate, that the terms and conditions of the Sales will have been negotiated by the Debtor and Successful Bidder(s) at arms'-length and in good faith, and that the parties did not engage in any conduct that would cause or permit the Sales to be avoided under Section 363(n) of the Bankruptcy Code.

67. Accordingly, the Debtor requests this Court make a finding at the Sale Hearing that the Successful Bidder is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

18

**F.** **Assumption and Assignment of the Contracts is authorized by section 365 of the Bankruptcy Code.**

68.     Sections 365(a) and (b) of the Bankruptcy Code authorize a debtor in possession to assume, subject to the court's approval, executory contracts or unexpired leases of the debtor. Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

69.     Section 365(b)(1) of the Bankruptcy Code, in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

> (b)(1)   If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A)      cures or provides adequate assurance that the trustee will promptly cure, such default . . .;
>
> (B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)      provide adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b).

70.     The standard applied by the Sixth Circuit in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which requires a debtor to determine that the requested assumption or rejection would be beneficial to its estate. *See EPLET, LLC v. DTE Pontiac North, LLC*, 984 F.3d 493, 503 (6th Cir. 2021) ("Section 365(a) enables the debtor (or its trustee), upon entering bankruptcy, to decide whether the contract is a good deal for the estate going forward. If so, the debtor will want to assume the contract, fulfilling its obligations while benefiting from the counterparty's performance. But if

not, the debtor will want to reject the contract, repudiating any further performance of its duties.").

71.     The "business judgment rule" is a presumption that in making a business decision, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the bests interests of the company. *In re Dwight's Piano Co.*, 424 B.R. 260, 284 (S.D. Ohio 2009) (citing *Gantler v. Stephens*, 965 A.2d 695 (Del. 2009)).

72.     Under this standard, a court should approve a debtor's business decision unless that decision is the product of "gross negligence or proof [is shown] that the action was not taken in an honest attempt to foster the corporation's welfare". *Id*.

73.     In the present case, the Debtor's assumption and assignment of the Assigned Contracts to the Successful Bidder(s) will meet the business judgment standard and satisfy the requirements of section 365 of the Bankruptcy Code. The assumption and assignment will likely be necessary for the Successful Bidder(s) to conduct business going forward, and since it is anticipated that no Successful Bidder(s) would take the Properties without certain executory contracts and unexpired leases, the assumption and assignment of such agreements is essential to securing the highest and best offer(s) for the Properties.

74.     Consequently, the Debtor submits that the Assignment Procedures are fair and reasonable, and respectfully requests the Court to approve such procedures and authorize the Debtor to assume and assign the Contracts in the manner provided for herein.

75.     A debtor in possession may assign an executory contract or an unexpired lease of the debtor if it assumes the agreement in accordance with section 365(a) of the Bankruptcy Code and provides adequate assurance of future performance by the assignee, whether or not there has been a default under the agreement. *See* 11 U.S.C. § 365(c)(2).

20

76. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *In re Barnhill's Buffet, Inc.*, 2008 Bankr. LEXIS at 8.

77. Significantly, among other things, adequate assurance of future performance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g.*, *In re Rachels Industries, Inc.,* 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990) (stating that adequate assurance of future performance is present when the prospective assignee's financial data indicates its ability to generate an income stream sufficient to meet its obligations).

78. Pursuant to the Bidding Procedures, the Potential Bidders are required to provide to the Debtor such financial and other information providing adequate assurance of future performance under any executory contracts and unexpired leases to be assumed pursuant to section 365 of the Bankruptcy Code in connection with the Sales, in a form requested by the Debtor so as to allow the Debtor to disseminate such information on any Non-Debtor Counterparty. Moreover, under the Assignment Procedures, Non-Debtor Counterparties will have the opportunity to object to adequate assurance of future performance by the Successful Bidder.

79. Accordingly, the Debtor submits that the assumption and assignment of the Assigned Contracts as set forth herein should be approved pursuant to section 365 of the Bankruptcy Code.

### REQUESTED WAIVER OF 6004(h)

80. The Debtor requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h). Timely consummation of the sale is of critical importance to both the Debtor and the Successful Bidder and the Debtor's efforts to maximize the value of the estate.

## NOTICE

81.     The Debtor has provided notice of this Motion either by electronic mail, facsimile, or United States First Class mail to: (i) the Office of the United States Trustee for the Middle District of Tennessee; (ii) the Defendants; and (iii) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

DATED:     November 19, 2025          Respectfully submitted,
           Nashville, Tennessee

           **HOLLAND & KNIGHT LLP**


           */s/ Blake D. Roth*
           Blake D. Roth (Federal ID No. 2666808)
           C. Scott Kunde (TN Bar No. 040218)
           511 Union Street, Suite 2700
           Nashville, TN 37219
           Telephone: (615) 244-6380
           Facsimile: (615) 244-6804
           Email: Blake.Roth@hklaw.com
                   Scott.Kunde@hklaw.com


           *Counsel for the Debtor and Debtor in Possession*

Case 2:25-bk-01916   Doc 110   Filed 11/19/25   Entered 11/19/25 08:26:27   Desc Main
                    Document      Page 22 of 52

**Exhibit A**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc. | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

**ORDER (I) APPROVING BIDDING PROCEDURES, (II) SCHEDULING AN AUCTION FOR AND A HEARING TO APPROVE THE SALE OF THE PROPERTIES, (III) APPROVING NOTICE OF RESPECTIVE DATE, TIME AND PLACE FOR THE AUCTION AND FOR A HEARING TO APPROVAL THE SALES (IV) AUTHORIZING THE SALE OF CERTAIN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (V) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS, AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "***Motion***")[1] of the above-captioned debtor and debtor in possession (the "***Debtor***") for an order pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 6004-1, 6005-1, and 9013-1 of the Local Court Rules of the United States Bankruptcy Court for the Middle District of Tennessee; and this Court having considered the Motion, the arguments of counsel and the evidence presented at the hearing to consider the Motion, and the entire record

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and due and sufficient notice of the Motion, hearing to consider the Motion, and the relief sought in the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion and any objections to the Motion (the "**Objections**"); and it appearing that the relief requested in the Motion is in the best interest of the Debtor, its estate, creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor, hereby finds and determines that:

A.      **Jurisdiction and Venue**. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, the consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

C.      **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002,6004, and 6006.

D.      **Notice**. The service of the Motion and the proposed entry of this Order was adequate and sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code and the Bankruptcy Rules.

E.      **Bidding Procedures**. The Debtor has articulated good and sufficient business reasons for the Court to approve the Bidding Procedures attached to the Motion as Exhibit B. The Bidding Procedures are fair, reasonable and appropriate and are designed to maximize the value of the proceeds of the sale of the Properties. The Bidding Procedures are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Properties.

F.      **Business Justification**. Approval of the Bidding Procedures and consummation of the proposed Auction and sale of the Properties (the "***Sale***") is in the best interest of the Debtor, the estate, creditors, and other parties in interest. The Debtor has demonstrated good, sufficient, and sound business purposes and justifications for the potential Sale to the Successful Bidder pursuant to section 363(b) of the Bankruptcy Code. Such business purposes and justifications include, but are not limited to, that the Bidding Procedures and the closing thereon will present the best opportunity to realize maximum value for the Property.

G.      **Notice of Auction and Sale Hearing**. The Notice of Auction and Sale Hearing, the form of which is attached to the Motion as Exhibit C, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Sale, and all relevant and important dates and objection deadlines with respect to the foregoing, and no other or further notice of the Motion, the Sale or the Auction shall be required.

H.      **Good and Sufficient Cause**. There is other good and sufficient cause to grant the relief requested in the Motion and approve the Contract and the Sale.

I.      **Legal and Factual Bases**. The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such. To the extent any conclusions of law are findings of fact, they are adopted as such. The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the hearing.

1

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.       The notice of the Motion and hearing are approved as being fair, reasonable, and adequate under the circumstances, and any additional notice as may otherwise be required under state and federal law is hereby deemed satisfied.

2.       The Motion is **GRANTED** to the extent set forth herein.

3.       All objections to the relief requested in the Motion or the entry of this Order, if any, that have not been withdrawn, waived, or settled as announced to the Court at the hearing are denied and overruled in their entirety on the merits, with prejudice.

**The Bidding Procedures**

4.       The Bidding Procedures attached to the Motion as **Exhibit B**, all exhibits and schedules thereto, and all of the terms and conditions thereof are hereby approved, and shall govern the bids and proceedings related to the Sale of the Properties at the Auction. The procedures and requirements set forth in the Bidding Procedures, including those associated with submitting a "Qualified Bid," are fair, reasonable and appropriate, and are designed to maximize recoveries for the benefit of the Debtor's estate, creditors, and other parties in interests. The Debtor is authorized to take all actions reasonable and necessary or appropriate to implement the Bidding Procedures.

**Auction, Sale Hearing, Objection Procedures**

5.       **Bid Deadline**. As further described in the Bidding Procedures, (i) the deadline for submitting bids for the Properties (the "*Bid Deadline*") is **February 20, 2026 at 4:00 p.m. (prevailing Central Time)**. Except as otherwise set forth in the Bidding Procedures or this Bidding Procedures Order, no bid shall be deemed to be a Qualified Bid unless such bid meets the requirements set forth in the Bidding Procedures.

2

6.      **Auction**. The Debtor may sell the Properties by conducting an Auction in accordance with the Bidding Procedures. If the Debtor receives more than one Qualified Bid for certain of the Properties, the Debtor will conduct an auction for the relevant Properties in accordance with the Bidding Procedures, which shall take place on **March 2, 2026 at 10:00 a.m. (prevailing Central Time)** at the offices of Holland & Knight LLP, 511 Union Street, Stuie 2700, Nashville, Tennessee 37219, or such later time or such other place as the Debtor shall designate and notify to all Qualified Bidders who have submitted Qualified Bids.

7.      **Sale Hearing**. The Sale Hearing shall be held before the Court on **March 17, 2026 at 9:30 a.m. (prevailing Central Time)** before the Honorable Judge Randal S. Mashburn, United States Bankruptcy Judge for the Bankruptcy Court for the Middle District of Tennessee, at 701 Broadway, Courtroom No. 1, Nashville, TN 37203. At the Sale Hearing, the Debtor will seek the entry of the Sale Order(s) approving and authorizing the Sale(s) to the Successful Bidder(s). The Sale Hearing (or any portion thereof) may be adjourned by the Court or the Debtors from time to time without further notice other than by announcement in open court, on the Court's calendar or through the filing of a notice or other document on the Court's docket.

8.      **Sale Objection Deadline**. The deadline to object to the relief requested in the Motion, including entry of any proposed Sale Order (a "*Sale Objection*") is **February 19, 2026 at 4:00 p.m. (prevailing Central Time)** (the "*Sale Objection Deadline*"). A Sale Objection must be filed with the Court and served in the manner set forth below so actually received no later than the Sale Objection Deadline.

## Notice Procedures

9.      Service of the Notice of Auction and Sale Hearing are sufficient to provide effective notice to all interested parties of, *inter alia*, the Bidding Procedures, the Auction, the

3

Sale Hearing, the Sales, and the Assignment Procedures in accordance with Bankruptcy Rules 2002 and 6004, as applicable, and are approved.

10. On or before five (5) business days after entry of this Bidding Procedures Order, the Debtors will cause the Notice of Auction and Sale Hearing to be sent by first-class mail postage prepaid, to the following: (a) the Office of the United States Trustee for the Middle District of Tennessee; (b) holders of the 30 largest unsecured claims against the Debtor; (c) the attorney general for the State of Tennessee; (d) the Internal Revenue Service; (e) all known taxing authorities for the jurisdictions to which the Debtor is subject; (f) all environmental authorities having jurisdiction over the Properties; (g) all state, local or federal agencies, having jurisdiction over any aspect of the Debtor's business operations; (h) all entities known or reasonably believed to have asserted a lien on any of the Properties; (i) counterparties to the Debtor's executory contracts and unexpired leases; (j) all persons that have expressed to the Debtor in interest in a transaction with respect to the Properties during the past six (6) months; (k) all of the Debtor's other known creditors and equity security holders; and (l) those parties who have formally filed a request for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 at the time of service.

## **Additional Provisions**

11. The terms and provisions of the Bidding Procedures, the ancillary agreements, and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, any Successful Bidder, and their respective successors, and assigns, all creditors of (whether known or unknown) and holders of equity interests in the Debtor, and any affected third parties, notwithstanding the dismissal of the Debtor's case or any subsequent appointment of any trustee under any chapter of the Bankruptcy Code or conversion of the Debtor's case to a case under chapter 7, as to which Debtor such terms and provisions likewise shall be binding and not subject

4

to rejection or avoidance. The Sale and this Order shall be enforceable against and binding upon and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 Debtor appointed in the bankruptcy case. Further, nothing contained in any plan confirmed in the chapter 11 case or any order confirming any plan, or any other order entered in this case shall conflict with or derogate from the provisions of the Contract or the terms of this Order.

12.    To the extent of any inconsistency between the provisions of this Order, the Bidding Procedures, and any documents executed in connection therewith, the provisions contained in this Order, the Bidding Procedures, and any documents executed in connection therewith shall govern, in that order.

13.    Nothing in this Order, the Bidding Procedures or any document executed in connection with the consummation thereof shall authorize or constitute a transfer of title to property which is excluded from the property of the Debtor's estate pursuant to section 541(b)(4) of the Bankruptcy Code

14.    The provisions of this Order are non-severable and mutually dependent. Headings are included in this Order for ease of reference only.

15.    The provisions of this Order authorizing the sale and assignment of the Properties free and clear of all liens, claims, encumbrances, and other interests shall be self-executing, and notwithstanding the failure of the Debtor or any other party to execute, file, or obtain releases, termination statements, assignments, consents, or other instruments to effectuate, consummate and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or against such Property, if any, shall be deemed released, discharged, and terminated.

16.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and 6006(d), this Order shall be effective and enforceable immediately and shall not be stayed. Time is of the

essence in closing the Sale. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being dismissed as moot.

17.     This Court shall, to the fullest extent allowed by law, retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Bidding Procedures, all amendments thereto, and any waivers and consents thereunder, and each of the agreements executed in connection therewith, including, but not limited to, retaining jurisdiction to: (a) interpret, implement, and enforce the provisions of this Order and the Bidding Procedures; and (b) adjudicate, if necessary, any and all disputes arising out of, concerning, or otherwise relating in any way to the Sale.

APPROVED FOR ENTRY:

**HOLLAND & KNIGHT LLP**

*/s/ Blake D. Roth*
Blake D. Roth (Federal ID No. 2666808)
C. Scott Kunde (TN Bar No. 040218)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: Blake.Roth@hklaw.com
         Scott.Kunde@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

6

**Exhibit B**

**Bidding Procedures**

**BIDDING PROCEDURES**[1]

Set forth below are the bidding procedures (the "***Bidding Procedures***") to be used with respect to the sales or dispositions (the "***Sale***s" and each a "***Sale***") of those certain Units (as described in the Sale Motion) (the "***Properties***").

Additional information regarding the Properties can be obtained by contacting Debtor's attorney:

**Holland & Knight LLP**

Blake D. Roth

(612) 244-6380

blake.roth@hklaw.com

## I.      Properties for Sale

The Sale of the Properties shall be subject to a competitive bidding process as set forth herein and approval by the United States Bankruptcy Court for the Middle District of Tennessee (the "***Bankruptcy Court***") pursuant to sections 105, 363, 365, and 1113 of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2002, 6003, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2002-1, 6004-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Middle District of Tennessee (the "***Local Rules***").

If the Debtor only receives one Qualified Bid (as defined below), for the Properties that are the subject of an Auction, then (a) the Debtor shall not hold such Auction; (b) the sole Qualified Bid will be deemed the Successful Bid (as defined below) with respect to the relevant Property; and (c) that Qualified Bidder will be named the Successful Bidder (as defined below) with respect to the relevant Property or Properties.

### A.      Description of the Properties to Be Sold

The Debtor is seeking to sell the Properties (as defined below) on a going concern basis, which are more fully described in the Motion. The Properties include substantially all of the assets utilized by the Debtor's business, includes the real property, inventory, receivables, equipment, equipment leases, intellectual property, unexpired leases, contract rights, permits, books and records, and other assets related to the Debtor's business, as well as all intellectual property assets, certain contracts, (the "***Properties***").

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the *Debtor's Motion Pursuant to 11 U.S.C.§§ 105(A), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 And 6004 for an Order (I) Approving Bidding Procedures, (II) Scheduling an Auction for and a Hearing to Approve the Sale of Properties, (III) Approving Notice of Respective Date, Time and Place for Auction and for a Hearing on Approval of the Sale, (IV) Authorizing The Sale Of Certain Assets Free And Clear Of All Liens, Claims, Interests, and Encumbrances, (V) Approving The Assumption And Assignment Of Certain Executory Contracts, and (VI) Granting Related Relief* (the "***Motion***").

## II. Key Dates and Deadlines

| Sale Process Key Dates and Deadlines | |
|---|---|
| **January 20, 2026** | Hearing on Approval of the Bidding Procedures |
| **January 28, 2026** | Deadline for Debtor to Provide Notice of Potential Assumption and Assignment |
| **February 19, 2026** | Deadline to File Cure Costs/Assignment and Sale Objections |
| **February 20, 2026** | Bid Deadline |
| **February 23, 2026** | Determination of Qualified Bids |
| **March 2, 2026** | Auction |
| **March 3, 2026** | Deadline to File Post-Auction Objections |
| **March 6, 2026** | Deadline for Debtor to File Reply to Sale Objections and Post-Auction Objections |
| **March 17, 2026** | Sale Hearing |

## III. Determination by the Debtor

As appropriate throughout the Bidding Process, the Debtor shall (a) coordinate the efforts of Potential Bidders in conducting their respective due diligence, (b) evaluate bids from Potential Bidders on the Properties, (c) negotiate any bid made to acquire the Properties or any portion thereof, and (d) make such other determinations as are provided in these Bidding Procedures (collectively, the "***Bidding Process***").

## IV. Due Diligence

Up to and including to the Bid Deadline (such period, the "***Diligence Period***"), the Debtor shall afford any Potential Bidder such available due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtor, in its business judgment, determines to be reasonable and appropriate under the circumstances. All reasonable requests for additional information and due diligence access from such Potential Bidders shall be directed to Holland & Knight LLP, legal counsel to the Debtor. Each Potential Bidder shall be required to acknowledge that it has had an opportunity to conduct all of its due diligence regarding the Properties in conjunction with submitting its Bid (as defined below). Notwithstanding anything in the foregoing to the contrary, the Debtor reserves the right, in its reasonable discretion, to withhold or limit access to any information that the Debtor determines to be commercially sensitive or otherwise not appropriate to disclose to any Potential Bidder.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtor or its advisors regarding the ability of each Potential Bidder to consummate a sale transaction. Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtor to determine that a bid made by such Potential Bidder is not a Qualified Bid.

## V. <u>Bid Deadline</u>

A Potential Bidder that desires to make a Bid on any of the Properties shall deliver copies of its Bid, in Microsoft Word format, by email to proposed counsel to the Debtor by no later than **<u>February 20, 2026 at 5:00 p.m. (prevailing Central Time)</u>** (the "***Bid Deadline***").

## VI. <u>Bid Requirements</u>

All bids (each hereinafter, a "***Bid***") with respect to the Sale of the Properties, must (collectively, the "***Bid Requirements***") be accompanied by a letter or email:

(a)      disclosing the identity of the person or entity submitting the Bid, as well as any party participating in or otherwise supporting the Bid, and the terms of any such participation or support (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the Bid);

(b)      stating with specificity the Property(ies) such Potential Bidder wishes to bid on and the liabilities and obligations to be assumed by the Potential Bidder;

(c)      accompanied by a duly executed purchase agreement (the "***Purchase Agreement***");

(d)      agreeing that the Potential Bidder's offer is binding and irrevocable until the later of (x) the Closing Date, or (y) twenty (20) days after the Sale Hearing (unless selected as the Next-Highest Bidder (as defined below) in which case such offer will remain open and binding on the Next-Highest Bidder until the Closing Date);

(e)      providing for a Closing Date that is consistent with the schedule contemplated herein;

(f)      providing that such Bid is not subject to any due diligence or financing contingency;

(g)      including evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transactions contemplated by the Purchase Agreement;

(h)      including an acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Properties prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Properties in making its bid; (iii) did not rely upon any written or oral statements, representations,

promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Properties or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Purchase Agreement; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid unless expressly agreed to the contrary by Debtor prior to the Bid Deadline;

(i) providing an affirmative statement that: (i) the Qualified Bidder submitting such Bid has acted in good faith consistent with section 363(m) Bankruptcy Code and not in any manner prohibited by section 363(n) of the Bankruptcy Code; (ii) the Qualified Bidder submitting such Bid has and will continue to comply with the Bidding Procedures; and (iii) the Qualified Bidder submitting such Bid waives any substantial contribution (administrative expense) claims under section 503(b) of the Bankruptcy Code related to the bidding for the Debtor's assets or otherwise participating in the Auction;

(j) providing that the Potential Bidder agrees to serve as a backup bidder (the "***Next-Highest Bidder***") if the Potential Bidder's Qualified Bid is the next highest and otherwise best bid after the Successful Bid (the "***Next-Highest Bid***") with respect to the relevant Properties that are the subject of such Bid and further on the condition that any such Successful Bid is for all of the same assets as the Next Highest Bid;

(k) offering to pay an amount that the Debtor determines constitutes a fair and adequate price, the acceptance of which would be in the best interests of the estate;

(l) providing adequate assurance of future performance information (the "***Adequate Assurance Information***"), and all such information subject to appropriate confidentiality, including (i) information about the Potential Bidder's financial condition, such as federal tax returns for two years, a current financial statement, or bank account statements, (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to consummate the proposed Sale, (iii) evidence that the Potential Bidder has obtained authorization or approval from its board of directors (or comparable governing body) with respect to the submission of its Bid, (iv) the identity and exact name of the Potential Bidder (including any equity holder or other financial backer if the Potential Bidder is an entity formed for the purpose of consummating the proposed Sale), and (v) such additional information regarding the Potential Bidder as the Potential Bidder may elect to include. By submitting a Bid, Potential Bidders agree that the Debtor may disseminate their Adequate Assurance Information to affected counterparties in the event that the Debtor determines such bid to be a Qualified Bid; and

(m) be accompanied by (i) a deposit in cash in the form of a certified check or wire transfer, payable to the order of the Debtor, in the amount of ten percent (10%) of the Bid, which funds will be deposited into an interest bearing escrow account to be identified and established by the Debtor (a "***Good Faith Deposit***") and

(ii) written evidence, documented to the Debtor's satisfaction, that demonstrates the Potential Bidder has available cash, a commitment for financing if selected as the Successful Bidder with respect to the relevant Properties and such other evidence of ability to consummate the transaction(s) as the Debtor may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals (<u>provided</u> that such commitments may have covenants and conditions acceptable to the Debtor).

The Debtor will review each Bid received from a Potential Bidder to determine whether it meets the requirements set forth above. A Bid received from a Potential Bidder that meets the above requirements, and is otherwise satisfactory to the Debtor, will be considered a "***Qualified Bid***" and each Potential Bidder that submits a Qualified Bid will be considered a "***Qualified Bidder***."

A Qualified Bid will be valued by the Debtor based upon any and all factors that the Debtor reasonably deems pertinent in the Debtor's reasonable business judgment, including, among others, (a) the amount of the Qualified Bid, (b) the risks and timing associated with consummating the transaction(s) with the Qualified Bidder, (c) any excluded assets or executory contracts and leases, and (d) any other factors that the Debtor may reasonably deem relevant.

The Debtor, in its business judgment reserve the right to reject any Bid if such Bid, among other things:

(n)     requires any indemnification of the Potential Bidder in its Purchase Agreement;

(o)     is not received by the Bid Deadline;

(p)     is subject to any contingencies (including representations, warranties, covenants and timing requirements) of any kind or any other conditions precedent to such party's obligation to acquire the relevant Properties;

(q)     seeks any bid protections; or

(r)     does not, in the Debtor's determination, include a fair and adequate price or the acceptance of which would not be in the best interests of the Debtor's estate.

Any Bid rejected pursuant to this paragraph shall not be deemed to be a Qualified Bid. If any Bid is so rejected, the Debtor shall cause the Good Faith Deposit of such Potential Bidder to be refunded to it within five (5) business days after the Bid Deadline.

## VII.    Aggregate Bids

The Debtor may aggregate separate bids from unaffiliated persons to create one "Qualified Bid," including at the Auction, with respect to bids for separate portions of the Properties, to determine the highest and otherwise best Qualified Bid(s); provided that all Qualified Bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

## VIII.  Credit Bid

Any bidder (or any designee thereof) holding a perfected security interest in any of the Properties may seek to credit bid all, or a portion of, such bidder's claims for its respective collateral in accordance with section 363(k) of the Bankruptcy Code (each such bid, a "*Credit Bid*"); provided, that, except as otherwise provided in the Bidding Procedures or the Bidding Procedures Order, such Credit Bid complies with the terms of the Bidding Procedures, including payment of any administrative costs of the Sale(s) in cash.

## IX.  Auction Procedures

Auction Time and Location. If the Debtor receives more than one Qualified Bid for the Properties, the Debtor will conduct an auction for the relevant Properties (the "*Auction*") on **March 2, 2026 at 10:00 a.m. (prevailing Central Time)** at the offices of Holland & Knight LLP, 511 Union Street, Stuie 2700, Nashville, Tennessee 37219 (or such later time or such other place as the Debtor shall designate and notify to all Qualified Bidders who have submitted Qualified Bids) for consideration of the Qualified Bids, each as may be increased at the Auction.

If the Debtor only receives one Qualified Bid for the Properties that are the subject of the Auction, then: (a) the Debtor shall not hold an Auction with respect to the relevant Properties; (b) the sole Qualified Bid will be deemed the Successful Bid with respect to the relevant Properties; and (c) that Qualified Bidder will be named the Successful Bidder with respect to the relevant Properties.

Participants and Attendees. Unless otherwise ordered by the Bankruptcy Court for cause shown, only the Qualified Bidders are eligible to participate at the Auction. At least one (1) day prior to the Auction, each Qualified Bidder must inform the Debtor in writing whether it intends to participate in the Auction. Professionals and principals for the Debtor and each Qualified Bidder shall be able to attend and observe the Auction, along with any other party the Debtor deems appropriate.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Properties and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith and *bona fide* offer to purchase the Properties identified in such bids.

Auction Packages. Prior to the commencement of the Auction, respectively, the Debtor will make a determination regarding the Properties for which the Debtor will conduct an Auction (each such asset or group of assets, an "*Auction Package*").

Starting Bids. Prior to the commencement of the Auction, the Debtor will determine, in its business judgment, the highest and otherwise best Qualified Bid submitted for each Auction Package (each such Qualified Bid, a "*Starting Bid*"), which determination will be communicated to Qualified Bidders prior to the commencement of the Auction. Bidding for each Auction Package at the Auction shall commence at the amount of the applicable Starting Bid.

Incremental Overbids. Bidding at the Auction for an Auction Package will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "***Subsequent Bid***") is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid and (ii) the Debtor determines that such Subsequent Bid is (A) for the first round, a higher and otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher and otherwise better offer than the immediately prior Leading Bid (as defined below).

The Debtor will announce at the outset of the Auction the minimum required increments for Successive Bids (each, such bid, a "***Incremental Overbid***"). The Debtor may, in its discretion, announce increases or reductions to Incremental Overbids at any time during the Auction.

Upon a Qualified Bidder's declaration of a Bid at the Auction, the Qualified Bidder must state on the record its commitment to pay within two (2) business days following the Auction, if such bid were to be selected as the Successful Bid or as the Backup Bid for the applicable Auction Package, the incremental amount of the Qualified Bidder's Good Faith Deposit calculated based on the increased purchase price of such Bid (such Good Faith Deposit so increased, the "***Incremental Deposit Amount***") if applicable.

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any Bid subsequent to a Starting Bid, the Debtor will, at each round of bidding, consider and/or give effect to (a) any additional liabilities to be assumed by a Qualified Bidder under the Bid, including whether such liabilities are secured or unsecured, and (b) any additional costs that may be imposed on the Debtor.

Leading Bid. After the first round of bidding and between each subsequent round of bidding, the Debtor will announce the Bid that it believes to be the highest and otherwise best offer for the applicable Auction Package (each such bid, a "***Leading Bid***") and describe the material terms thereof. Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the material terms of the Leading Bid, subject to the Debtor's authority to revise the Auction procedures to the extent permitted by the Bidding Procedures.

Evaluation of Bids. The Debtor shall have the right to determine, in its business judgment, which Bid is the highest and otherwise best Bid with respect to an applicable Auction Package and may consider any and all relevant factors including (a) the amount and nature of the total consideration, (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof, (c) the tax consequences of such Bid, (d) and any other considerations that may impact the Debtor's estate and its stakeholders. Further, in accordance with the terms of these Bidding Procedures, the Debtor may reject, at any time, without liability, any bid that the Debtor deems to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtor and its estate.

Successful Bids and Next-Highest Bids. Immediately prior to the conclusion of each Auction, the Debtor will (a) determine, consistent with these Bidding Procedures, which Qualified Bid constitutes the highest and otherwise best Bid(s) for each Auction Package (each such Bid, a

"***Successful Bid***") and Next-Highest Bid for each Auction Package and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid for such Auction Package (each such bidder, a "***Successful Bidder***") and the amount of the purchase price and other material terms of the Successful Bid. As a condition to remaining the Successful Bidder, the Successful Bidder shall, within two (2) business days after the conclusion of the Auction, (i) if applicable, wire to the Debtor in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Successful Bid(s) and (ii) submit to the Debtor fully executed documentation memorializing the terms of the Successful Bid(s). Any Next-Highest Bidders shall also, within two (2) business days after the conclusion of the Auction, if applicable, wire to the Debtor in immediately available funds the Incremental Deposit Amount, calculated based on the purchase price in the Next-Highest Bid(s).

As soon as practicable following conclusion of each Auction, the Debtor shall file a notice on the Bankruptcy Court's docket identifying the Successful Bidder(s) for the applicable Properties and any applicable Next-Highest Bidder(s) with respect to such Auction. Notwithstanding the selections of the Successful Bidder(s) and the Next-Highest Bidder(s), all bids are **binding and irrevocable** until the later of (i) the Closing Date, or (ii) thirty (30) days after the Sale Hearing (unless selected as the Next-Highest Bidder, in which case such offer will remain open until the relevant Closing Date).

## X.     Jurisdictional Content

All bidders at the Auction will be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, the Sales and all other agreements entered into in connection with any proposed Sale. Such consent and waiver shall apply to the extent that it is later determined that the Bankruptcy Court, absent consent, cannot enter final orders or judgments with regard to the foregoing matters consistent with Article III of the United States Constitution.

## XI.    Acceptances of Qualified Bids

The Debtor's presentation to the Bankruptcy Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtor's acceptance of such Bid. The Debtor will have accepted a Successful Bid only when such Successful Bid has been approved by the Bankruptcy Court at the Sale Hearing. The Debtor intends to close the Sales on or before **March 17, 2026** unless another time or date, or both, are agreed to in writing by the Debtor and the Successful Bidder (each, a "***Closing Date***").

## XII.   Sale Hearing

Each Successful Bid and any Next-Highest Bid will be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid and any Next-Highest Bid shall take place on **March 17, 2026 at 9:30 a.m. (prevailing Central time)** (the "***Sale Hearing***"). The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.

At the Sale Hearing, the Debtor will seek entry of orders that, among other things: (i) authorize and approve the Sale(s) to the Successful Bidder(s) and/or the Next-Highest Bidder(s), (ii) includes a finding that the Successful Bidder(s) and/or the Next-Highest Bidder(s) is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code, and (iii) as appropriate, exempts the Sale(s) and conveyances of the Properties from any transfer tax, stamp tax or similar tax, or deposit under any applicable bulk sales statute.

## XIII.   Return of Good Faith Deposit

The Good Faith Deposits of all Potential Bidders shall be held in escrow by the Debtor but shall not become property of the Debtor's estate absent further order of the Bankruptcy Court. The Good Faith Deposits of all Potential Bidders shall be retained by the Debtor, notwithstanding Bankruptcy Court approval of the relevant Sale, until three (3) business days after the earlier of (a) the applicable Closing Date(s), or (b) ten (10) days following the Sale Hearing; provided, however, that the Good Faith Deposit of each Next-Highest Bidder shall be retained until three (3) business days after the applicable Closing Date. The Debtor shall retain any Good Faith Deposit submitted by each Successful Bidder. At the closing of a Sale contemplated by a Successful Bid, the applicable Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit to the extent such a deposit was provided.

If a Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then as applicable (and as such agreements may be amended or modified at the Auction), the Debtor and its estate shall be entitled to retain the Good Faith Deposit of such Successful Bidder as part of the damages resulting to the Debtor and its estate for such breach or failure to perform.

## XIV.   Reservation of Rights and Modifications

Notwithstanding any of the foregoing, the Debtor and its estate, in the exercise of its fiduciary obligations, reserve the right to modify these Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Properties in any manner, or the order approving these Bidding Procedures and that will best promote the goals of the bidding process, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all Potential Bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all potential bidders, adjourn, postpone, close, re-open following closure, or cancel the Auction at or prior to the Auction, and adjourn or reschedule the Sale Hearing.

## XV.   Next-Highest Bidder

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close a Sale prior to such date as specified in the applicable Purchase Agreement or Sale Order (or such date as may be extended by the Debtor), the Debtor, upon written notice to the Next-Highest Bidder, may designate the applicable Next-Highest Bid as the Successful Bid for the applicable Property or Properties, the Next-Highest Bidder will be deemed to be the Successful Bidder for such Property or Properties, and the Debtor will be authorized, but not directed, to close the Sale

Case 2:25-bk-01916   Doc 110   Filed 11/19/25   Entered 11/19/25 08:26:27   Desc Main
Document   Page 41 of 52

to the Next-Highest Bidder subject to the terms of the Next-Highest Bid without the need for further order of the Bankruptcy Court and without the need for further notice to any interested parties.

*[The remainder of this page is intentionally left blank]*

**Exhibit C**

**Notice of Sales, Auction and Sales Hearing**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha manor Association, Inc. | Case No. 25-01916 |
| Debtor. | **Bidding Procedures Hearing Date:**<br>**January 20, 2026 at 9:30 a.m. (CT)** |
| | **Bidding Procedures Objection Deadline:**<br>**February 13, 2026 at 4:00 p.m. (CT)** |
| | **Proposed Sale Hearing Date:**<br>**March 17, 2026 at 9:30 a.m. (CT)** |
| | **Proposed Sale Objection Deadline:**<br>**February 19, 2026 at 4:00 p.m. (CT)** |

## NOTICE OF SALES, BIDDING PROCEDURES, AUCTION, AND SALE HEARING

1.      On May 6, 2025, Hiawatha Manor Association, Inc. (the "***Debtor***") filed with the United States Bankruptcy Court for the Middle District of Tennessee (the "***Bankruptcy Court***") a motion (the "***Motion***") for the entry of: (a) an order (the "***Bidding Procedures Order***"),[1] (i) authorizing and approving bidding procedures (the "***Bidding Procedures***") in connection with the sales or dispositions (the "***Sales***" and each a "***Sale***") of the Properties (the "***Properties***"), or any portion of the Properties, (ii) scheduling the auction (the "***Auction***") for and a hearing to approve the Sales, (iii) authorizing and approving the form and manner of notice of the respective date, time, and place for the Auction and a hearing to approve the Sales, (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (v) approving the form and manner of notice of the assumption and assignment of certain executory contracts and unexpired leases, and (vi) granting related relief; and (b) orders (the "***Sale Orders***") authorizing and approving (i) the sales of the Properties free and clear of all claims, liens, liabilities, rights, interests, and encumbrances (except certain permitted encumbrances and/or assumed liabilities as provided in the applicable purchase agreements), (ii) the Debtor to assume and assign certain executory contracts and unexpired leases, and (iii) related relief.

2.      On [____], 2026, the Bankruptcy Court entered the Bidding Procedures Order (Dkt. No. [_]). [to be completed upon Court's filing]

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Order (including the Bidding Procedures). Any summary of the Bidding Procedures and the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

3.     Pursuant to the Bidding Procedures, a Potential Bidder that desires to make a bid on the Properties shall deliver an electronic copy of its bid to the parties identified in the Bidding Procedures so as to be received on or before **February 20, 2026 at 5:00 p.m. (prevailing Central time) (the "*Bid Deadline*") and otherwise comply with the Bidding Procedures. FAILURE TO ABIDE BY THE BIDDING PROCEDURES MAY RESULT IN A BID TO BE REJECTED. ANY PARTY INTERESTED IN BIDDING ON THE PROPERTIES SHOULD CONTACT DEBTOR'S LEGAL COUNSEL, HOLLAND & KNIGHT LLP (ATTN: BLAKE ROTH, (615) 244-6380, BLAKE.ROTH@HKLAW.COM).**

4.     Pursuant to the Bidding Procedures, if the Debtor receives more than one Qualified Bid for certain of the Properties, the Debtor will conduct an auction for the relevant Properties (the "*Auction*") on **March 2, 2026 at 10:00 a.m. (prevailing Central time)** at the offices of Holland & Knight LLP, 511 Union Street, Stuie 2700, Nashville, Tennessee 37219 (or such later time or such other place as the Debtor shall designate and notify to all Qualified Bidders who have submitted Qualified Bids) for consideration of the Qualified Bids, each as may be increased at the Auction.

5.     Only the Qualified Bidders are eligible to participate at the Auction.

6.     If the Debtor only receives one Qualified Bid for the Properties that are the subject of the Auction, then (a) the Debtor shall not hold an Auction with respect to the relevant Properties; (b) the sole Qualified Bid will be deemed the Successful Bid with respect to the relevant Properties; and (c) that Qualified Bidder will be named the Successful Bidder with respect to the relevant Properties.

7.     Each Successful Bid and any Next-Highest Bid will be subject to approval by the Bankruptcy Court. The hearing to approve a Successful Bid and any Next-Highest Bid shall take place on **March 17, 2026 at 9:30 a.m. (prevailing Central time)** (the "*Sale Hearing*"). The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.

8.     Any objections to the Sales or the relief requested in connection with the Sales, including objections to entry of any proposed Sale Orders (a "*Sale Objection*"), other than a Post-Auction Objection (as defined below) or a Cure Cost/Assignment Objection (which shall be governed by the Assignment Procedures) must: (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) be in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (v) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **February 19, 2026 at 4:00 p.m. (prevailing Central time)** (the "*Sale Objection Deadline*"). The "*Notice Parties*" are as follows: (a) proposed counsel to the Debtor, Holland & Knight LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219 (Attn: Blake D. Roth, blake.roth@hklaw.com); and (b) the Office of the United States Trustee for the Middle District of Tennessee.

2

9.      Any objections solely with respect to conduct at the Auction (if held) (a "***Post-Auction Objection***") must: (i) be in writing; (ii) signed by counsel or attested to by the objecting party; (iii) be in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **March 3, 2026 at 4:00 p.m. (prevailing Central time)** (the "***Post-Auction Objection Deadline***").

| | | |
|---|---|---|
| DATED: | November 19, 2025<br>Nashville, Tennessee | Respectfully submitted, |

HOLLAND & KNIGHT LLP

*/s/ Blake D. Roth*
Blake D. Roth (Federal ID No. 2666808)
C. Scott Kunde (TN Bar No. 040218)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: Blake.Roth@hklaw.com
          Scott.Kunde@hklaw.com

*Counsel for the Debtor and Debtor in Possession*

**Exhibit D**

**Potential Assumption and Assignment Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc., | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

**Cure Cost/Assignment Objection Deadline:**
**February 19, 2026 at 4:00 p.m. (Prevailing CT)**

**Post-Auction Objection Deadline:**
**March 3, 2026 at 4:00 p.m. (Prevailing CT)**

**Sale Hearing Date:**
**March 17, 2026 at 4:00 p.m. (Prevailing CT)**

## NOTICE OF POSSIBLE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALES

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

1.      On May 6, 2025, Hiawatha Manor Association, Inc. (the "***Debtor***") filed with the United States Bankruptcy Court for the Middle District of Tennessee (the "***Bankruptcy Court***") its motion (the "***Motion***") for the entry of: (a) an order (the "***Bidding Procedures Order***"),[1] (i) authorizing and approving bidding procedures (the "***Bidding Procedures***") in connection with the sales or dispositions (the "***Sales***," and each a "***Sale***") of substantially all of the Debtor's properties (the "***Properties***"), or any portion of the Properties, (ii) scheduling the auction (the "***Auction***") for and a hearing to approve the Sales, (iii) authorizing and approving the form and manner of notice of the respective date, time, and place for the Auction and a hearing to approve the Sales, (iv) approving procedures for the assumption and assignment of certain executory contracts and unexpired leases, (v) approving the form and manner of notice of the assumption and assignment of certain executory contracts and unexpired leases, and (vi) granting related relief; and (b) one or more orders (the "***Sale Orders***") authorizing and approving (i) one or more sales of the Properties free and clear of all claims, liens, liabilities, rights, interests, and encumbrances, (ii) the Debtor to assume and assign certain executory contracts and unexpired leases, and (iii) related relief.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures Order (including the Bidding Procedures). Any summary of the Bidding Procedures and the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms and conditions thereof. To the extent that there is any conflict between any such summary and such actual terms and conditions, the actual terms and conditions shall control.

1

2.      On [___], 2026, the Bankruptcy Court entered the Bidding Procedures Order [Docket No. _____]. [to be completed upon Court's filing]

3.      The Sale Hearing shall take place on **March 17, 2026 at 9:30 a.m. (prevailing CT)**. The Sale Hearing may be adjourned by the Debtor from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice, which may be a hearing agenda stating the adjournment, on the docket of the Debtor's chapter 11 case.

4.      To facilitate the Sale, the Debtor is potentially seeking to assume and assign certain executory contracts (the "***Contracts***") to any Successful Bidder for the Properties (or subset thereof), in accordance with the Assignment Procedures provided for in the Bidding Procedures Order. Each of the Debtor's Contracts is identified on **Exhibit 1** attached hereto. **THE INCLUSION OF ANY CONTRACT ON <u>EXHIBIT 1</u> DOES NOT CONSTITUTE AN ADMISSION THAT A PARTICULAR CONTRACT IS AN EXECUTORY CONTRACT OR UNEXPIRED LEASE OF PROPERTY OR REQUIRE OR GUARANTEE THAT SUCH CONTRACT WILL BE ASSUMED AND ASSIGNED, AND ALL RIGHTS OF THE DEBTOR WITH RESPECT THERETO ARE RESERVED.** The cure amount (each, a "***Cure Cost***"), if any, that the Debtor believes is required to be paid to the applicable counterparty (each, a "***Non-Debtor Counterparty***," and collectively, the "***Non-Debtor Counterparties***") to each of the Contracts under section 365(b)(1)(A) and (B) of the Bankruptcy Code is identified on **Exhibit 1** attached hereto.

5.      If a Non-Debtor Counterparty objects to the Cure Costs for its Contract or to the proposed assumption, assignment, or transfer of such Contract, the Non-Debtor Counterparty must file with the Bankruptcy Court and serve on the Notice Parties (as defined below) a written objection (a "***Cure Cost/Assignment Objection***"). Any Cure Cost/Assignment Objection must: (i) be in writing; (ii) be signed by counsel or attested to by the objecting party; (iii) be in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor, including the amount of Cure Costs in dispute; and (v) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **February 19, 2026 at 4:00 p.m. (prevailing CT)** (the "***Cure Cost/Assignment Objection Deadline***"). The "***Notice Parties***" are as follows: (a) proposed counsel to the Debtor, Holland & Knight LLP, 511 Union Street, Suite 2700, Nashville, Tennessee 37219 (Attn: Blake D. Roth, blake.roth@hklaw.com and C. Scott Kunde, scott.kunde@hklaw.com); and (b) the Office of the United States Trustee for the Middle District of Tennessee.

6.      Objections of any Non-Debtor Counterparty related solely to the identity of, and adequate assurance of future performance provided by, the Successful Bidder(s) (a "***Post-Auction Objection***") must: (i) be in writing; (ii) be signed by counsel or attested to by the objecting party; (iii) be in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor, including the amount of Cure Costs in dispute; and (v) be filed with the Bankruptcy Court and properly served on the Notice Parties so as to be received no later than **March 3, 2026 at 4:00 p.m. (prevailing CT)** (the "***Post-Auction Objection Deadline***").

7.     At the Sale Hearing, the Debtor may seek Bankruptcy Court approval of the assumption and assignment to any Successful Bidder of those Contracts that have been selected by the Successful Bidder to be assumed and assigned. The Debtor and its estate reserves any and all rights with respect to any Contracts that are not ultimately assigned to the Successful Bidder.

8.     **ANY NON-DEBTOR COUNTERPARTY TO A CONTRACT WHO FAILS TO TIMELY FILE AND PROPERLY SERVE A CURE COST/ASSIGNMENT OBJECTION OR POST-AUCTION OBJECTION AS PROVIDED HEREIN WILL (I) BE FOREVER BARRED FROM OBJECTING TO THE CURE COSTS AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT TO SUCH CONTRACT IN THE EVENT IT IS ASSUMED AND ASSIGNED BY THE DEBTOR AND THE DEBTOR SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE COSTS, AND (II) BE DEEMED TO HAVE CONSENTED TO THE ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF SUCH CONTRACT (INCLUDING THE TRANSFER OF ANY RELATED RIGHTS AND BENEFITS THEREUNDER) TO THE RELEVANT SUCCESSFUL BIDDER AND SHALL BE FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTOR OR THE SUCCESSFUL BIDDER THAT ANY ADDITIONAL AMOUNTS ARE DUE OR DEFAULTS EXIST, OR CONDITIONS TO ASSUMPTION, ASSIGNMENT, AND/OR TRANSFER MUST BE SATISFIED UNDER SUCH CONTRACT, OR THAT ANY RELATED RIGHT OR BENEFIT UNDER SUCH CONTRACT CANNOT OR WILL NOT BE AVAILABLE TO THE RELEVANT SUCCESSFUL BIDDER.**

9.     If a Non-Debtor Counterparty files a Cure Cost/Assignment Objection satisfying the requirements of these Assignment Procedures, the Debtor and the Non-Debtor Counterparty shall meet and confer in good faith to attempt to resolve any such objection without Bankruptcy Court intervention (the "***Resolution Procedures***"). If the applicable parties determine that the objection cannot be resolved without judicial intervention in a timely manner, the Bankruptcy Court shall make all necessary determinations relating to such Cure Cost/Assignment Objection at a hearing scheduled pursuant to the following Paragraph.

10.     Consideration of unresolved Cure Cost/Assignment Objections and Post-Auction Objections relating to all Contracts, if any, will be held at the Sale Hearing, provided, however, that (i) any Contract that is the subject of a Cure Cost/Assignment Objection with respect solely to the amount of the Cure Cost may be assumed and assigned prior to resolution of such objection and (ii) the Debtor may adjourn a Cure Cost/Assignment objection in their discretion.

11.     A timely filed and properly served Cure Cost/Assignment Objection or Post-Auction Objection will reserve the filing Non-Debtor Counterparty's rights relating to the Contract, but will not be deemed to constitute an objection to the relief generally requested in the Motion with respect to the approval of the Sale.

12.     The Debtor's assumption and assignment of a Contract is subject to approval by the Bankruptcy Court, consummation of the Sale and receipt of a Confirmation Notice (as defined below). Absent consummation of the Sale, receipt of a Confirmation Notice and entry of a Sale Order approving the assumption and assignment of the Contracts, the Contracts shall be deemed

neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor.

13.    Within ten (10) days following the assumption and assignment of any Contract to the relevant Successful Bidder, the Debtor shall file with the Bankruptcy Court and shall serve each Non-Debtor Counterparty whose Contract the Debtor assumed and assigned with a notice of assumption and assignment of such Contract (the "***Confirmation Notice***"). Any Contract where no Confirmation Notice was served shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtor. Contracts may be designated or de-designated for assumption and assignment at any time prior to the consummation of the Sale.

14.    Copies of the Motion, the Bidding Procedures, the Bidding Procedures Order, and the Assignment Procedures may be obtained during regular business hours from the Clerk of the Bankruptcy Court, 701 Broadway, Room 170, Nashville, Tennessee 37203, and may be viewed for a fee on the internet at the Court's website (http://www.deb.uscourts.gov/) by following the directions for accessing the ECF system on such website.

*[The remainder of this page is intentionally left blank.]*

DATED:    November 19, 2025    Respectfully submitted,
Nashville, Tennessee

**HOLLAND & KNIGHT LLP**

*/s/ Blake D. Roth*
Blake D. Roth (Federal ID No. 2666808)
C. Scott Kunde (TN Bar No. 040218)
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804
Email: Blake.Roth@hklaw.com
        Scott.Kunde@hklaw.com

*Counsel for the Debtor and Debtor in Possession*