# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| In re: | Chapter 11 |
| Hiawatha Manor Association, Inc., | Case No. 25-01916 |
| Debtor. | Judge Randal S. Mashburn |

_____

**NOTICE REGARDING SCOPE OF ISSUES NOT ADJUDICATED IN CONNECTION WITH DEBTOR'S MOTION**
**PURSUANT TO 11 U.S.C. §§ 105(a), 363, AND 365**

Linda Simmons, a co-owner and interested party, respectfully files this Notice for the limited purpose of ensuring clarity in the record in advance of the Court's ruling on the Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 for an Order (i) Approving Bidding Procedures, (ii) Scheduling an Auction for and a Hearing to Approve the Sale of the Properties, (iii) Approving Notice of the Respective Date, Time, and Place for the Auction and Sale Hearing, (iv) Authorizing the Sale of Certain Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (v) Approving the Assumption and Assignment of Certain Executory Contracts, and (vi) Granting Related Relief (Document 110), including clarification of issues reflected in the Debtor's filed Monthly Operating Reports.

The Debtor's pending motion seeks sale approval under § 363; issues bearing on those sales are expected to be addressed through summary judgment in related adversary proceedings. However, the motion does not present for adjudication the source of operating liquidity, the contractual basis for postpetition obligations, or the terms of the management agreements underlying substantial liabilities.

1

Paragraph 17 of the Debtor's Motion introduces a new factual premise by attributing the transfer of seventy (70) weeks —the ownership interest upon which the Debtor relies in seeking authority to sell the Hiawatha West property— to the Shared Services Agreement that has not been introduced into the record or placed in evidence. Nowhere else in the Motion is the seventy-week transfer attributed to the Shared Services Agreement, nor does the Motion reconcile that assertion with prior descriptions of the transfer as having been effected by a January 2024 transfer instrument executed by a Lemonjuice executive. To the extent paragraph 17 relies on the Shared Services Agreement as the source of authority for the transfer, the absence of that agreement from the record renders the assertion unsupported as the record presently exists.

In Paragraph 18 the Debtor describes severe liquidity constraints driven by owner delinquencies, but does not assert that the Association was indebted at the time Lemonjuice began its involvement. That distinction was expressly articulated by a Lemonjuice representative at the April 9, 2025 members' town hall via Zoom, who stated that the Association was not in debt when its management began but lacked operating liquidity. See Exhibit A (April 9, 2025 Town Hall transcript excerpt). The record does not reflect how those liquidity shortfalls later evolved into the asserted debt structure underlying the bankruptcy.

The Motion's statement in paragraph 21 that the Debtor "hoped that owners could meet the existing threshold or at least begin the process of amending the termination provision" reflects a characterization of events that has not been adjudicated and does not address the timing or duration of the bankruptcy process or the accrual of obligations during that period.

That assertion is inconsistent with prior statements made at the April 9, 2025 members' Town Hall that the quorum requirement was an insurmountable hurdle and that there was no way

2

to conduct a termination vote outside of bankruptcy. See Exhibit B (April 9, 2025 Town Hall transcript excerpts).

The Motion does not explain this inconsistency.

In paragraph 27, the sale motion seeks to assume and assign "certain executory contracts and/or unexpired leases," but does not identify any specific agreements subject to assumption or assignment. The Debtor has previously represented on the record, in its Response to the Motion to Compel (Document 54), that it "did not and still does not believe the Management Agreement is an executory contract," and amended Schedule G to add the February 2024 contract only "to avoid incurring additional and ongoing costs unnecessarily," with a full reservation of rights. At the hearing on the Motion to Compel, Debtor's counsel further declined to add the February 2025 contract to Schedule G.

In light of these representations, it is unclear whether the Debtor now contends in its sale motion that any executory contracts exist that are subject to assumption and assignment under § 365. In the absence of identified contracts, counterparties cannot determine whether their rights are affected, cure amounts cannot be evaluated, and the Court cannot make the findings required by § 365.

Absent designation of which contracts are proposed for assumption and assignment, and absent disclosure of the terms of any such contracts, the Court and owners cannot assess whether § 365 cure obligations or post-assignment obligations may be imposed post-sale.

Paragraph 37 under Section C (Assumption and Assignment Procedures) of the Debtor's sale motion permits the Debtor to designate contracts for assumption and assignment up until consummation of the Sale, establish cure amounts through a notice-and-silence process binding on counterparties, and deem non-objection as consent.

Recent Monthly Operating Reports, including the MOR filed as Document No. 137 for the period ending November 30, 2025, reflect substantial operating losses being carried as increased accounts payable, while cash balances remain largely unchanged. As shown in Document 137, Part 1 (Cash Receipts and Disbursements), the Debtor's cash balance remained essentially flat ($77,251 in November from $76,943 in October) despite reporting a current-month operating loss of $97,318 in Part 4 (Statement of Operations).

As further reflected in Part 2 (Asset and Liability Status), postpetition payables increased from 210,342 in October to $303,536 in November, indicating that ongoing losses and professional fees are not being funded through operating cash flow, but instead are being carried as unpaid obligations.

The Monthly Operating Reports do not explain:

- which obligations have been deferred

- whether any vendors or affiliates are effectively financing continued operations through extended nonpayment,

- whether reliance on increasing accounts payable is expected to continue pending sale,

- or what contractual authority governs the incurrence of such obligations.

The record likewise does not reflect adjudication or disclosure of:

- the contractual basis and terms of the management agreements giving rise to significant liabilities,

- authorization for continued accumulation of indebtedness during the pendency of the case,

- or the funding assumptions underlying continued operations while sale approval is sought.

No party has sought adjudication of these issues, and the management agreements giving rise to substantial liabilities are not in evidence before the Court. Accordingly, these matters have

not been presented, litigated, or resolved in connection with the pending summary judgment motions.

This Notice is not intended as a motion, objection, or request for relief. It is submitted solely to ensure the completeness and accuracy of the record. Nothing herein should be construed as adjudicating or resolving the foregoing issues.

Dated: January 8, 2026                              Respectfully submitted,

                                           /s/ Linda Simmons
                                           Linda Simmons
                                           9643 Chanteclair Circle
                                           Highlands Ranch, CO 80126
                                           Telephone: (615) 594-2866
                                           Email: lindasimmons2866@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2026, I served a true and correct copy of the foregoing Notice Regarding Scope of Issues Not Adjudicated in Connection with Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a), 363, and 365 via the Court's CM/ECF system on all registered participants, including:

- Blake D. Roth – Counsel for Debtor
- C. Scott Kunde – Counsel for Debtor
- Thomas H. Forrester – Counsel for Lake Tansi Village POA
- Rebecca J. Yielding – Trial Attorney, Office of the U.S. Trustee
- Office of the United States Trustee
- Michael E. Collins – Counsel for Hiawatha Manor West Association, Inc.
- S. Marc Buchman – Counsel for Hiawatha Manor West Association, Inc.

/s/ Linda Simmons
Linda Simmons
9643 Chanteclair Circle
Highlands Ranch, CO 80126
Telephone: (615) 594-2866
Email: lindasimmons2866@gmail.com